THE SOUTHERN EXPRESS CO. *v.* R. A. MOON.

1. BAILMENTS: COMMON CARRIER BOUND TO TRANSPORT GOODS UNDER HIS COMMON LAW RESPONSIBILITY.—A common carrier is bound by law, for a reasonable reward, to receive and carry goods offered for transportation, subject to all the responsibilities legally incident to his employment. He has no right to refuse to receive and transport goods because the shipper will not assent to a special contract of shipment which limits his common law responsibility; and if he do so he will be liable to an action for damages.

2. SAME: LIMITATIONS OF CARRIER'S RESPONSIBILITY BY SPECIAL CONTRACT. —Whether a common carrier has a right to limit, by special contract with the shipper, his common law responsibility as an insurer of the goods intrusted to him for transportation: *Quære?* But conceding that he can, the assent of the shipper must be express, and upon a sufficient consideration, and be freely and fairly given with a full knowledge of the contract and of the legal rights thereby waived, and not obtained by the fraud and circumvention of artfully-contrived printed receipts thrust upon the shipper in the hurry and press of railroad travel, or under other circumstances not favorable to a full understanding of the force and effect of the contract.

3. SAME: LIMITATIONS DO NOT EXTEND TO NEGLIGENCE.—Exceptions in a common carrier's receipt, limiting his common law responsibility, are strictly construed against the carrier, and are never extended to relieve from responsibility for a loss occasioned by his own negligence.

4. SAME: SAME.—In case of loss of goods by a common carrier, he will be responsible, unless he show affirmatively that the loss was occasioned by a cause within some one of the exceptions in his receipt.

5. SAME: COMMON LAW RESPONSIBILITY OF COMMON CARRIERS.—A common carrier, when there is no special contract limiting his responsibility, is bound as an insurer of goods received by him for transportation, as against loss occasioned by any cause other than the act of God, the public enemy, or by the conduct of the shipper.

Error to the Circuit Court of Madison county. Hon. R. S. Hudson, judge.

*E. M. Yerger* and *G. P. Fouie,* for plaintiffs in error.

1. The plaintiff below was bound by the contract made and received by his agent. A notice known to the agent of the owner of the goods is notice to the owner, notwithstanding he is personally ignorant of such notice. Angell on Carriers, 253,

254, and cases cited in note 1. And so, of course, would the contract of the agent be the contract of the owner.

2. The receipt is a special contract between the parties. It is perfectly well settled in England that a carrier may limit his responsibility by a special acceptance. *Kenrig* v. *Eggliston,* Aleyn, 93; *Southcote's case,* 4 Cooke, 84; 1 Vent. 190, 288, per Hale, C. J.; 1 Smith, 484; 5 East, 428; Abbott on Shipping, ed. of 1822, 296; 5 East, 513; 4 Burrows, 2301; 2 M. & S. 1; 2 B. & C. 20; 2 Taunt. 264; 1 Starke, 186, 72; 13 Price, 329; 5 Bing. 217; 4 Bing. 218. By a special contract a carrier may dispense with all responsibility. 1 Bell's Com. 4 ed. 380–384. So in America. 8 S. & R. 533; 9 Watts, 87; 9 Wend. 115; 8 Pick. 182; 3 Fairfield, 422; 19 Wend. 234.

In the *New Jersey Steam Nav. Co.* v. *Merchants' Bank,* 6 How. (U. S.) R. 382, Nelson, J., in delivering the opinion of the court, says: " As the extraordinary duties annexed to his employment concern only, in the particular instance, the parties to the transaction, involving simply rights of property, the safe custody and delivery of the goods, we are unable to perceive any well-founded objection to the restriction, or any stronger reason forbidding it than exists in the case of any other insurer of goods, to which his obligation is analogous, and which depends altogether upon the contract between the parties. The owner, by entering into the contract, virtually agrees that, in respect to the particular transaction, the carrier is not to be regarded as in the exercise of his public employment, but as a private person who incurs no responsibility beyond that of an ordinary bailee for him, and answerable only for misconduct or negligence. * * * The right of the carrier thus to limit his responsibility has, we think, never been doubted."

And in this court, in *Whitesides* v. *Thurlkill,* 12 S. & M. 599, the same doctrine is laid down. So in 2 S. & M. 578. For a full and particular discussion of all the authorities, English and American, I refer the court to Angell on Carriers, ch. 7, and particularly to sec. 59, 60, 220, 224, 226, and especially to sec. 232 of that work.

A common carrier is allowed to stipulate, by general notice, that he will not be responsible for any loss beyond a certain

sum, unless the goods were especially entered and paid for. 5 Bing. 217 ; 10 Mees. & Wels. 161. The case in 5 Bing. is very fully and elaborately considered, and the opinion by Chief Justice Best. See Angell on Carriers, sec. 233.

For a general discussion of the right by special contract to limit liability by a carrier, see *Holliston* v. *Newlin*, 19 Wend. 234; where Bronson, C. J., admits that it may be done, though he denies that it can be done by general notice.

*John Handy*, for defendant in error.

The declaration is, in form, *assumpsit*, and has three counts. The first count alleges that defendants below, being common carriers for reward, received and undertook to carry a barrel of whiskey for Moon, from Sardis, Mississippi, to Canton, for hire, but that the whiskey was lost on the way. The second count contains the same averments, and alleges that the goods were lost by the negligence of the bailee. And the third count is for the recovery of the price paid for the carriage of the whiskey.

The general principle of the law of carriers is, that they are responsible for the loss of goods arising in any other way than by the act of God or of the public enemies. Edwards on Bailment, 454. The only exceptions to the rule being in those cases where the goods perish of their own inherent defects, without the fault of the bailee, or where the loss is the fault of the owner, or where goods are thrown overboard a ship to save the ship and crew; to which last class of cases the rule of "general average," under mercantile law, applies.

It is also a rule of the law that the carrier, as a public servant, is bound to receive the goods for carriage, if in the line of his business, and if tendered at a reasonable time, together with the reward for their carriage. Edwards on Bail. 443.

In the case before the court, there was an attempt on the part of the express company to alter, by the terms of the receipt they gave for the whiskey, their responsibility for the value of the article, and to limit it to fifty dollars.

To this restriction I object, because—1. Suppose the agreement to have been expressly made between the parties for the restricted liability, such agreement is of no force and effect,

because it is against public policy, which requires that common carriers should be held to strict accountability according to the principles of the common law. In *Gould* v. *Hill*, 2 Hill, 623, it was expressly decided that a carrier cannot evade his common liability, even by express contract; and in 3 Hill, 9, it is decided that, though other bailees may contract for a restricted liability, common carriers cannot do so. See *Cole* v. *Goodwin*, 19 Wend. 251; 10 N. H. R. 487. And in Georgia, 2 Kelley, 349, and Ohio, 10 Ohio R. 145, it has been expressly held that a common carrier cannot restrict his common law liability by express contract with the employer. It is conceded that a majority of the American cases, including this court, assert that such restriction may generally be made by express contract; they have generally followed the decision in Supreme Court (U. S.) of the *New Jersey Steam Nav. Co.* v. *Merchants' Bank*, 6 How. 344, which denied the doctrine of *Gould* v. *Hill*, and held such contracts valid. All the early English decisions held to the strict rule on the subject, but a different rule crept in by degrees, and such contracts have been sanctioned in that country. Notwithstanding the number and weight of authorities sustaining such contracts, if the carrier is bound to take the goods and carry them, and is liable to action if he refuse, it is difficult to see how a contract, by which the bailor agreed to accept a responsibility less than the law would impose on the carrier, can be any thing short of a *nudum pactum*. The looser doctrine on this subject is against the policy of the country; it promotes litigation, by rendering the liability of the carrier to his employer more uncertain and indefinite, and harder to be established; it lessens the security the public should have for their property in the hands of carriers, and in its practical effect often forces owners of goods to accept, under pressure of circumstances, a less responsibility than that which, under other states of the case, they would be willing to receive, and ought to have, thus giving the carrier the advantage over his employer in the contract; it is in violation of public morals, in that it subjects the carriers and their agents to temptation to plunder and theft, and then to resort to perjury to cover up their fraud; and as, from the very nature of such contracts, the owner or his agents

are not generally with the goods *in transitu*, while the carrier and his agents must always be, it gives to the carrier the advantage in proof in all judicial investigations of their conduct as carriers. These and other evils arising from the rule introduced in the English courts on this subject may reasonably be presumed to be the cause of the passage of the " Carrier's Act" by the Parliament, in 1830, which restores, to a great extent, the earlier principles of the English decisions on this subject, holding carriers to strictest accountability.

2. If the common law liability can be limited at all, it can only be by express contract, or at least by notice of the limitation brought home to the knowledge of the bailor, and expressly assented to by him.    The carrier is bound to carry the goods at all events—and the limitation contained in the receipt was simply the act of the express company, notwithstanding which the owner has the right to insist that the carrier shall take the goods subject to the full measure of his responsibility at law—the notice amounts only to a proposition, which fails if not assented to by the owner.    This is the doctrine of the leading American authorities.    See Parsons on Contracts, 703, and numerous authorities cited in notes.    Edwards on Bailments, 469, *et seq.;* 19 Wend. 234–247; Id. 251; 4 Sand. 136; 5 Id. 180; 23 Vermont R. 186 ; 4 Foster (N. H.) R. 71 ; 6 How. (U. S.) R. 344 ; 13 Barb. 353 ; 16 Penna. R. 67 ; 31 Maine R. 228 ; 3 Fairfield ; 11 Cush. 97.    In *Cole* v. *Goodwin*, 19 Wend. 251, it is expressly decided that no contract would arise from notice.

The doctrine of notice seems to be applicable *only* to cases where the undertaker has no other means of knowing of what nature or value the goods may be but that afforded him by the contract; so that where the bulk or evident quality of the goods sufficiently indicates the value and corresponding risk, the principle of exemption does not apply.    Edwards on Bailment, 474, 475, citing Jeremy on Car. 48, and quoting (p. 474) the case of *Beck* v. *Evans*, 16 East, 244, where a " cask of brandy" lost by the carrier was the subject-matter of the suit.    The notice contained a stipulation that the carrier would not be liable in case of loss, above the value of five pounds.    It was held that the carrier was liable, that his exemption could only be when the

goods are "of a much larger value than, from a knowledge· of their bulk or quality, he could probably guess them to be."

3. There was no proof of any express contract between Moon and the company for a limited liability; no proof that he assented to the limitation contained in the receipt, or that he had any knowledge of it; but, on the contrary, the only proof in the cause on that point is, that Moon had no knowledge of the limitation until several days after the date of the receipt. The burden of proof was on the express company, to show· that notice was brought home to the bailor. Redfield on Railways, 271, note 5. All the authorities which hold that the liability of the carrier may be limited by express contract also hold that, in case of loss, the law throws the burden of proof upon the carrier to show that there was no negligence on his part. Negligence is presumed from the loss. 1 Kernan, 491; 19 Penna. R. 67; 13 Barb. 364; 9 Rich. 201; 9 Watts, 87; 8 Id. 44; Parsons on Contracts, (notes to p. 703, *et seq.*); 7 Hill, 292.

4. But in this case there was actual proof of negligence by the express company, and this would ,render them liable for the actual damages sustained, even if there was a clear and express contract limiting their liability to fifty dollars. See cases cited on last point above; also 31 Maine R. 228. What degree of negligence will render the carrier liable in such cases? These express contracts, contravening the established rule, were introduced for the purpose of protecting carriers from extraordinary events, and were not meant to exempt them from *due and ordinary care.* 4 Price, 34. The carrier is held, in England, (in cases of express contract,) liable for the want of such care as a prudent man would take of his own property. *Batson* v. *Donavan,* 4 B. & Ald. 30; *Duff* v. *Budd,* 3 Brod. & B. 182. It seems to be the English doctrine that, in order to render the carrier liable, in such cases, it is not necessary to prove a total abandonment of that character, or an act of wilful misconduct, but that it is enough to prove an act of ordinary negligence. Note to Parsons on Contracts, 713, 714. In this country, most of the cases on this subject have followed the rule of Supreme Court (U. S.) in *New Jersey Nav. Co.* v. *Merchants' Bank,* 6 How. 344, viz., that there being a special contract as to liability for loss, the

degree for responsibility is just that that would attach to a private person engaged in a like occupation, and that the carrier is bound to ordinary care in the custody of goods, &c. In the language of Chief Justice Redfield, in his book on Railways, p. 272, art. 5, "It is certainly something very incongruous and not a little revolting to the moral sense, that a bailee for hire should be allowed to stipulate for the consequences of his own negligence, *ordinary or extraordinary.* If the rule allowing such restricted liability is, as we have seen, one of doubtful legality and policy, certainly the strictest rule as to negligence should be adopted in such cases, and especially so as, from the nature of the case, the proof of circumstances attending the loss of the goods carried must necessarily be more in the hands of the carrier and his agents than of the employers. A strict rule on this subject would be in keeping with the decisions of this court in other cases of bailment. 12 S. & M. 599; *Patton* v. *Vickleng* R. R. Miss.

Moreover, a stricter rule ought to be adopted in this case than in cases of ordinary common carriers, for, according to the proof in this case, the express company is an *extraordinary* common carrier; it carries for double the usual price paid railroads, and that the very road whose track, locomotives, cars, &c., it uses; and the increased price is paid them in consideration of the greater speed and safety with which they are supposed to carry goods. There being a consideration for greater responsibility from the very nature of the case and the acts of the parties, the law affixes that increased responsibility to their contracts for carriage, and will hold them accountable for even slight negligence.

5. The want of diligence is fully shown in this case by the testimony of defendant below. It was the duty of the express company to have provided ample means of transportation of the goods to Canton. He was at fault in detaining them at all in Grenada, and whatever injury or loss of them occurred while there cannot be excused by showing any diligence in attention to the goods while at Grenada. They took the goods to be carried in the speediest manner, received a high premium for their undertaking; if they could not have taken the goods to

Canton with the despatch required of express companies, by reason of the accumulation of goods at Grenada, their agents at Sardis must have known the fact, and ought to have informed the plaintiff of it. They did not do so, and if the goods are lost by reason of want of transportation they are liable.

HARRIS, J., delivered the opinion of the court:

The defendant in error purchased a barrel of whiskey from Burton, Titus & Co. at Sardis, Miss., and instructed them to ship it to Canton, Miss., by express. This they did, taking from the company a receipt in the following words:

"SOUTHERN EXPRESS COMPANY, Successor to
ADAMS' EXPRESS Co. SARDIS, *May* 31*st*, 1862.

"Received of Burton, Titus & Co., one barrel whiskey, valued under fifty dollars, unless otherwise herein stated, marked R. A. Moon, care of W. E. Daucey, Canton, Miss., which is mutually agreed is to be forwarded to our agency nearest or most convenient to destination only, and there delivered to other parties to complete the transportation. It is further agreed, and is part of the consideration of this contract, that the Southern Express Company is not to be held liable or responsible for the property herein mentioned for any loss or damage arising from the dangers of railroad, ocean, steam, or river navigation, leakage, fire, or from any cause whatever, unless specially insured by it and so specified in this receipt. Which insurance shall consti-. tute the limit of the liability of the Southern Express Company in any event. And, if the value of the property above described is not stated by the shipper, the holder hereof will not demand of the Southern Express Company a sum exceeding fifty dollars for the loss or detention of, or damage to, the property aforesaid. Nor shall claim be made for damage to goods not properly packed and secured for transportation. All articles of glass will be taken at shipper's risk only; and the shipper agrees that the Company shall not be held responsible for any injury by breakage or otherwise.

"Freight paid, $6.00.

"Insurance ———        "For the Company,

"R. S. ANDERSON."

This receipt was sent to the plaintiff in error by the consignors, and not received by him until after the lapse of several days. The record shows that he knew nothing of the receipt or its contents until it reached him at Canton, Miss. That he gave no other instructions to Burton, Titus & Co., and did not authorize or sanction the limitation of the responsibility of the express company contained in the receipt. That the whiskey was received by the agent of the express company at Grenada, about the 1st June, 1862, on. the train from Sardis, about eleven o'clock at night. That the barrel was left on the platform of the Mississippi and Tennessee railroad depot, about seventy-five yards from the express office, where the agent of the company stayed. That there was, at the time, a great accumulation of government and other freights at Grenada, and it was impossible to send the whiskey and other freights off as rapidly as required; and that this was the reason why it was not sent forward. That the whiskey remained that night in the charge of one Brown, an Irishman, in the employment of the railroad as watchman, who was employed by the agent of said company to guard it that night. That it remained the next day in the same place, and was watched by said agent of the express company. That the said agent " got the same man to watch it the next night, and during that night it was destroyed;" and "he heard nothing of the loss of the whiskey until the morning after the second night." That he slept about seventy-five yards from where the barrel of whiskey lay; that he employed Brown. to watch it because there were large numbers of soldiers at that time about the railroad depot, who were constantly committing trespasses on the goods deposited there, and breaking open barrels of liquor. The record further shows that, "on the second night, a band of soldiers drove Brown off from his charge forcibly, and drank and carried off the whiskey."

Defendant in error applied to the company for payment; they refused to pay more than fifty dollars. That the value of the whiskey in Canton was from seven to ten dollars per gallon; and that there were forty-two and a half gallons in the barrel. That plaintiff in error paid six dollars for the transportation of the barrel. That the express company were com-

mon carriers for reward, and usually charged about double rates for freight.

Upon this state of facts appearing on the trial below, the court was asked on the part of the plaintiff in error to instruct the jury—

1. "That the defendants, as common carriers, are only liable for loss by gross negligence or fraud on the part of themselves or their agents. And if the plaintiff in this case does not prove such negligence or fraud, by which the whiskey was lost to the plaintiff, the verdict should be for defendants."

2. "That if there is evidence of the fact that the plaintiff agreed to and accepted the terms of the receipt or contract either by himself or agent, that, even if entitled to judgment, he could only recover to the amount of fifty dollars, the sum named in said receipt."

These instructions were refused by the court.

The jury found a verdict for plaintiff below for the sum of three hundred and three dollars and sixty-seven cents. Judgment was rendered thereon, and this writ is prosecuted to reverse the judgment, and the refusal to give the instructions asked for the express company is assigned for error here.

A common carrier is bound, for reasonable reward, to receive and carry goods offered for transportation, subject to all the responsibilities incident to his employment, and is liable to an action in case of refusal. He is an insurer against all loss, the acts of God, the public enemies, or the owner of the goods only excepted. He cannot, by notice or other artifice or evasion, avoid the just responsibilities wisely imposed upon him for the public good, by the old and well-established rules of law governing his conduct and protecting the community against the unlimited temptations to fraud, collusion, robbery, and peculation incident to his employment.

Rigorous as this law may seem, and hard as it may actually be in some instances, it is nevertheless founded on the principles of public utility and safety, to which all private considerations ought to yield. Consignors have only to insist on a simple receipt for their goods, offering to pay reasonable compensation for insurance and transportation, and steadily refus-

ing the artfully-prepared receipts limiting the carrier's liability and depriving the consignor of his legal rights, to restore in practice the security and safety which the law affords. They will in this manner avoid the losses which scheming corporations and unconscionable tricksters, under the guise of special agreements, are daily inflicting on them.

The *public policy* on which the extraordinary liability of common carriers is founded is too important to be thus virtually repealed by the fraud and circumvention of artfully-contrived, printed, or prepared receipts thrust upon those to whom the hurry and press of railroad travel denies the time of examination, or the opportunity of *fair assent.*

As the case before us does not necessarily call for a review of the cases on this point, we shall concede for the present that the *number* of cases sanctioning this doctrine greatly preponderate in favor of the right of limitation by special contract. But in such cases express assent, with a full knowledge of the terms of the special contract and of the legal rights thereby waived, as well as a consideration for such waiver on the part of the consignor, must exist. And if it be merely doubtful whether the consignor *intended* to waive his legal rights, public policy requires that they should be presumed and upheld.

Exceptions inserted in the receipts of carriers are generally construed strictly against the carrier; and, notwithstanding the exception, the burden of proof still rests upon the carrier to exonerate himself from liability, by showing a loss of the goods from a cause within the exception.

Where, as in the case of carriers, a public duty is imposed by law, and it is sought by special agreement to avoid that duty, no *implication* can be indulged to support such an agreement; but an actual contract, assented to in fact by both parties, must be shown. Edwards on Bailments, 486–488; 19 Wend. 234–247; 6 Howard (U. S.) R. 334.

These general principles of familiar application afford an easy solution of the only point presented for decision in this case.

The error relied on for reversal here is the refusal to give the second instruction.

That instruction asserts the principle that, in all cases where

there is a special agreement limiting the carrier's responsibility to a given amount, and the goods are lost, the owner is only entitled to recover the sum stipulated in the agreement.

In the case of *Cole* v. *Goodwin,* 19 Wend. 251, it is said by Justice Cowen to be well settled that the carrier cannot, either capriciously in a single instance, nor by public notice, seen and read by his customer, *nor even by special agreement,* exonerate himself from the consequences of gross neglect; and numerous cases to this effect are cited by him in support of the position. And so the doctrine is stated in the text by Mr. Angell in his work on Carriers, 267. See also Redfield on Railroads, p. 272, sec. 5, where it is said by the author: "There is certainly something very incongruous, and not a little revolting to the moral sense, that a bailee should be allowed to stipulate for exemption from the consequences of his own negligence, ordinary or extraordinary."

If, therefore, it were even admitted that the record shows that there was a special agreement, fully understood and assented to by the owner, upon a sufficient consideration, limiting the carrier's liability to fifty dollars, such *agreement* would be no defence in this action, where the ground of recovery relied on is the negligence of the carrier.

The second instruction asserts the contrary doctrine, and was therefore properly refused; and the circumstances appearing in this record fully warrant the jury in their verdict on the ground of gross negligence.

Let the judgment be affirmed.