*Hudson & Slaymaker, C. M. Frazier* and *M. B. Carpenter,* for appellants.

Submitted *ex parte.*

---

## THE OVERLAND MAIL & EXPRESS CO. *v.* CARROLL.

(*Supreme Court of Colorado, December Term, 1883—Appeal from the District Court of Hinsdale County.*)

1. CARRIERS—EXPRESS COMPANIES—LIMITATION OF LIABILITY. In the absence of special contract, express companies are subject to the same liability as other common carriers. At common law are regarded as absolute insurers of goods intrusted to them for transportation when properly packed, except for loss by act of God, or the public enemy; may be held both as carriers and forwarders. The liability may, however, be limited by special contract with the consignor.

2. SAME—SAME. But it is held that, upon grounds of public policy, they cannot even by contract, shield themselves from responsibility from loss or injury, nor limit the amount to less than the value of the loss, by the negligence of themselves, their agents, employees or servants.

3. SAME—NEGLIGENCE. It being the custom to require valuable packages to be sealed before receiving for shipment, it is negligence to receive an unsealed package, or to ship it unsealed. Nor can the company, so in default, be excused by the fact that the loss may have occurred on one of the subsequent connecting lines.

4. SAME—CONSTRUCTION OF CONTRACT FOR LIMITING LIABILITY. The terms of the contract limiting liability, being for the benefit of the company, must be construed most strongly against it. A contract undertaking to limit the liability to that of a mere forwarder, does not relieve the company from the exercise of ordinary care while the goods are in its possession.

5. INSTRUCTIONS. If conflicting and irreconcilable propositions of law are contained in the charge, and it appears that the jury may have been misled thereby, a new trial should be granted; but if, upon a careful consideration of the entire charge, though there be conflict between some portions thereof, it appears that the complaining party could not have been prejudiced by it, the Supreme Court will not disturb the verdict on account of imperfections therein.

HELM, J. In December, 1880, Carroll, plaintiff in the Court below, delivered to defendant's agent at Lake City, a package

properly addressed, to be carried by express to the city of Dubuque, in the State of Iowa; he deposited the sum of three dollars to cover charges for the entire transfer, and received the following receipt, which was upon a printed blank with the spaces properly filled in writing:

"OVERLAND MAIL AND EXPRESS COMPANY,
"LAKE CITY, Dec. 17th, 1880.

"Received of P. J. Carroll, a box said to contain a gold watch and chain, valued at fifty dollars, and marked Miss Mollie Carroll, Dubuque, Iowa, which we undertake to forward to the nearest point of destination reached by this company only, perils of navigation excepted. And it is hereby expressly agreed that the said Overland Mail and Express Company are not to be held liable for any loss or damage, except as forwarders only; nor for any loss or damage of any box, package or thing for over fifty dollars, unless the just and true value thereof is herein stated; nor for any loss or damage by fire, the acts of God, or of Indians, or of the enemies of the government, the restraint of governments, mobs, riots, insurrections or pirates, or from any of the dangers incident to a time of war; nor upon any fragile fabric, unless so marked upon the package containing the same; nor upon fabrics consisting of or contained in glass.

"Three dollars deposited to prepay charges.

"By E. H. SMITH,          J. L. SANDERSON & Co.
          "Agent.                    Proprietors."

At the time of delivering the package as aforesaid, plaintiff informed defendant's agent that it contained a gold watch and chain which was worth $150, whereupon the agent advised him that the company would not be responsible in connection therewith, for more than $50. The articles were inclosed in a small wooden box, neatly made, with the cover securely fastened by screws, the whole weighing about two and a half pounds. Plaintiff requested the agent to seal the box and the agent agreed to do so; he did not, however, and when its destination was reached the contents were missing; the cover was held on with screws as when shipped, but the box contained only rolls or wads of paper.

Upon being informed by plaintiff of the theft, the agent exclaimed, "by George, I forgot to seal the box, I ought to have sealed it;" and to another witness he said, substantially, "I wish I had sealed the package, it might be some assistance to

us to find out the locality where the watch was extracted from the box."

The box was duly delivered by defendant at Alamosa, the terminus of its line, to the D. & R. G. Express Company for further transportation, but was not then opened or examined. Upon this state of facts, plaintiff brought his suit and recovered a verdict and judgment for $135 in the Court below; defendant prosecutes this appeal thereform.

In the absence of special contract with the shipper, express companies are subject to the same liability as other common carriers. At common law they are regarded as absolute insurers of goods properly packed, when intrusted to them for transportation, against loss or injury, except it be occasioned by the act of God or the public enemy; and it is now the settled doctrine that they may at the same time be subject to liability both as carriers and forwarders. That is, "they will always be held responsible as common carriers to the extent of the transportation upon their own line, and beyond that they are responsible as forwarders." Their responsibility in the latter capacity is in some respects greater than that of other common carriers in the ordinary course of business between connecting lines. See 2 Redfield's Railway Cases, note on p. 81, and cases cited.

This liability may, however, be limited by special contract with the consignor. But it is held, on the ground of public policy, that they cannot even by contract shield themselves from responsibility for loss or injury occasioned by the negligence of themselves, their employees or servants. *York Company* v. *Central Railroad*, 3 Wallace, 107; Field on The Law of Damages, Sec. 394, and cases; 2 Redfield on Railways, p. 31, (5th Ed.)

Appellant undertook to limit its liability by contract in accordance with the foregoing doctrine. The receipt given Carroll upon delivery of the package is supposed to evidence the terms of this agreement. It is the usual method of making such contracts, and is sufficient so far as the form is concerned for the purpose designed. Upon accepting without objection or protest, such an instrument, with knowledge of its contents, the shipper ratifies and is bound by all the conditions thereof,

except those as to which no kind of a contract would, under the circumstances, be binding upon him.

The cause was tried to a jury and the question of negligence was fairly submitted to them. Upon the subject of sealing packages, Smith, the agent who received the box, testified as follows: "Q. Have you an institution to seal packages in your office? A. Yes, sir. Q. Is it the custom of the office to seal packages? A. I don't know that it is; it is more the custom to have other parties seal their packages before we receive them. Q. Why did you say to Mr. Carroll that you forgot to seal the package? A. It would have been better if I had said I forgot to have him seal it. It is the custom of nearly all common carriers not to receive valuable packages unless sealed; I ought not, perhaps, to have received the package until it was sealed, although it was very nicely put together, and I never dreamed that anybody was carrying a screw-driver. Q: This sealing business is done mainly for the purpose of tracing packages if the contents have been disturbed? A. Yes, sir. Q. Is it then always the custom to seal a package, if it appears to be packed in such a manner as to accomplish this end? A. No. Q. Is the rule universal with regard to sealing? A. No; we are guided by the appearance of the package."

Witness Flynn, having had eighteen years experience in the express business, also testified: "Q. If you are so familiar with the customs of said companies, state what the custom is, if any, as to sealing express packages upon sending, and the purpose of such custom, and how general among express companies? A. The packages must be properly sealed before shipment; I mean valuable packages; the purpose is for security; the custom is general of sealing packages sent by express."

From the foregoing testimony, coupled with the promise of Smith at the time he received the box, and his language upon hearing of the loss of its contents, the jury evidently arrived at the following conclusions, viz: That Smith was guilty of negligence in not sealing the package; and that it was the custom of express companies to seal valuable packages themselves, or it was their custom not to receive them until sealed by the owner. We would certainly not feel warranted in disturbing either of these findings upon the evidence before us.

But they establish the liability of appellant. If it be the custom of express companies to seal such packages themselves, appellant is liable for its servants' negligence in not sealing. If, as the agent himself contends, the custom is not to receive them until sealed by the shipper, the company is responsible for his negligence in receiving the box unsealed, and afterwards shipping it in the same condition.

Appellant cannot be excused on the ground that the loss may have occurred on one of the subsequent connecting lines; this may be true; for aught that appears in the testimony, the contents may have been extracted after the box was transferred to the D. & R. G. Express Company, at Alamosa. Yet it was a valuable package and should have been sealed. The loss arises from the negligence of appellant's agent in not sealing, and for the result of such negligence it is responsible.

Appellant could not make a binding contract with the owner whereby it should be released from all liability in case of loss through its negligence; upon the same principle it could not make a binding compact with him limiting its liability for loss occasioned by its negligence, to fifty dollars, or to any other sum short of the actual value of the goods shipped; provided of course, that it had notice of such actual value when it received them. The evidence shows the watch and chain to have been worth one hundred and thirty-five dollars, and the jury were justified in returning a verdict for that amount. See *Southern Express Co.* v. *Moore*, 39 Miss., 822; 2 Redfield's Am. Ry. Cases, p. 86.

If conflicting and irreconcilable propositions of law are contained in the Court's charge, and it appears that the jury may have been misled thereby to appellant's prejudice, a new trial should be granted.

In this case the charge is by no means a model one. There is some conflict between certain of the instructions given in behalf of the respective parties. But upon a careful and thorough consideration of the entire charge we are satisfied that appellant could not have been prejudiced by such conflict, and that we would not be warranted in granting a new trial by reason of imperfections therein. The law giving common carriers a right to limit their liability by contract except in case of negligence, was correctly stated by the instructions for

plaintiff. Those for defendant omit the qualification on the subject of negligence. If the jury were in any way misled by this portion of the charge, it must have been in the company's favor, and the error constitutes, therefore, no ground for reversal.

Appellant endeavored to restrict its liability by declaring in the contract that it should "not be held liable for any loss or damage except as forwarders only." This, like all other portions of the contract incorporated for its benefit, must be construed most strongly against the company. Appellee, when he accepted the receipt, probably had no conception of the meaning of this limitation. But supposing that he is estopped from asserting his ignorance, still appellant is not released from responsibility.

Technically it could not be a mere forwarder while the goods were in transit on its own line. The contract itself shows that the company was to transport the package from Lake City to some other point; for it provides for delivering the same "at the nearest point of destination reached by this company." Appellant was, under the contract, not merely to receive and forward the box by some carrier having no interest in the freight, and no expense or responsibility in the transportation; it would be no strained or unnatural interpretation of the contract to say that the intention was to limit defendant's liability to that of a forwarder from the *terminus of its line,* leaving its responsibility that of a common carrier, with the other restrictions imposed by the contract, while the goods were in transit thereto.

But we may construe the contract to be, that while acting as a carrier over its own line, it should only be liable as a forwarder, and we may suppose the contract to have been understood by the shipper and binding upon him. Yet in the capacity of forwarder, appellant was held to the exercise of ordinary care; it was responsible for the negligence of its agents while the package remained in its possession. And while itself acting as a carrier in transporting the goods, although relieved from liability save only as a forwarder, it must see that reasonable skill, prudence and industry, are used in protecting and preserving the same.

The law is, that a restriction like the one under considera-

tion does not relieve the express company from liability for loss occasioned by the negligence of an employee on a steamboat or other conveyance owned and conducted by some third party, but ordinarily used by the company in its business as a means of transportation. Certainly the restriction cannot relieve it from responsibility, where, as in this case, such loss results from the negligence of its own employees. See on this subject, *Hooper* v. *Wells, Fargo & Co.*, 27 Cal., 11; also, note in 2 Redfield's Am. Ry. Cases, 261.

Under this view of the law it cannot be that appellant was prejudiced by the fourth instruction given by appellee.

The judgment of the Court below must be affirmed.

*Affirmed.*

*G. Q. Richmond*, for appellant.