## SCHLOSS v. WOOD ET AL.

On the trial of an issue as to whether parties acted as common carriers
    or as forwarders merely, together with evidence tending to estab-
    lish that they acted in the latter capacity, there was testimony that
    such parties were engaged in the business of receiving merchandise
    from a railroad company, at the terminus of its line of road, and
    transporting the same to a neighboring town; that they had an
    office at such town where freight bills were collected and custom

solicited; and that they were doing business for the general public. *Held*, that such issue should have been submitted to the jury under proper instructions.

*Appeal from Lake County Court.*

THE facts are stated in the opinion.

Mr. J. L. MURPHY, for appellant.

Mr. CLINTON REED, for appellees.

STALLCUP, C.   This action was commenced by appellees upon a demand against appellant for certain services rendered and certain charges paid in forwarding, from Weston to Leadville, one hundred and twenty half-barrel kegs of beer.  The appellant, in his answer, counterclaimed for damages, occasioned, as alleged, by the fault of appellees in negligently failing to protect the beer from freezing, in consequence whereof eighty-nine kegs of the said beer were lost and destroyed; and also alleged that appellees were common carriers, and as such received and carried the beer; and that while so carrying the beer from Weston to Leadville the said freezing and loss occurred. From the evidence it appears that in the month of February, 1880, the beer had been sent from St. Louis by railway to Weston, the end of the railway at that time, and there by appellees received and sent to Leadville by wagons.   The evidence tended to show that the beer was in good order when received at Weston; that the weather was very cold; that the beer was taken out of the railway car by appellees at Weston about three hours before it was loaded on the wagons; that some hay was put around it in the wagons to protect it from freezing; that the kegs in the center, as loaded on the wagons, were the kegs that did not freeze; that eighty-nine kegs were burst, and the beer lost therefrom, when the kegs were delivered at Leadville; that appellees presented to appellant their bill for the charges, including the freight from

Weston to Leadville; that the appellees kept an agent in their business at Denver and at Leadville; that prior to the arrival of the beer at Weston one of the appellees called upon appellant at Leadville, when appellant said to him that the beer was on the road, and requested that appellees ship the beer on to Leadville on arrival at Weston, and that it should be protected from freezing by putting building-paper and hay around it. The jury returned a verdict for appellees for $604, the amount of their demand. Judgment was given upon the verdict, and this appeal was taken to reverse this judgment.

Upon the trial appellees adduced evidence tending to show that they acted in the premises as forwarders merely, while the appellant adduced evidence tending to show that they were common carriers, and accordingly acted in the premises. The court took the question upon this issue from the jury by the following instruction: "The defendant sets up as a further defense that the plaintiffs were common carriers, and consequently insurers of the goods, and that if any injury happened the beer in transit that they were responsible unless that damage was occasioned by the act of God or the public enemy. I will take the liberty of saying to you that there is nothing in this case upon which you can hold these plaintiffs as common carriers." Had the evidence all been in support of the appellees upon this issue, this action of the court would have been warranted, but the evidence was not all this way upon this issue. Witness May testified as follows: " *Question.* Where did you reside in the months of January and February, 1880? *Answer.* In Leadville, Colo. *Q.* Were you engaged in any business at that time? If so, what was it? *A.* I was in the clothing business. *Q.* Do you know the plaintiffs, Wood Bros.? *A.* Yes, sir; have known them for three years. They were in the transfer business from Weston and Buena Vista to Leadville. They were engaged in this business about the latter part of 1879 and 1880.

*Q.* What do you mean by transfer business? *A.* To receive merchandise from the railroad company and deliver them to parties consigned. *Q.* When goods were consigned to persons here in Leadville, which goods came over some of the roads leading to Weston or Buena Vista, where did Wood Bros. deliver the goods? At what place? *A.* They delivered them at Leadville. *Q.* Did the Wood Bros. carry any goods for you, from the end of the track at Weston to Leadville? *A.* They did. *Q.* In what manner, and to what extent, did they carry goods for you from the end of the track at Weston? *A.* They brought them in wagons. *Q.* You may give the manner of collecting for the carrying of goods. *A.* The money was collected by their collector. *Q.* Did they have any houses or offices for carrying on their business? And if so, where? *A.* They had an office in this city, corner Sixth and Poplar streets, and one at the end of the track. *Q.* What part of the business was transacted at the Leadville end of the line by plaintiffs? *A.* Collecting freight bills and soliciting patronage. *Q.* What was the extent of their business? *A.* They were doing business for the general public. *Q.* How do you know they were doing business for the general public? *A.* Mr. Wood told me they were hauling for a great many of our neighbors, and would like to haul for us." There was considerable other evidence to the same effect.

A common carrier is one who undertakes as a business, for hire or reward, to carry from one place to another the goods of all persons who may apply for such carriage. Hutch. Carr. § 47, and note. And the same author, at section 62, states the distinction between forwarders and common carriers as follows: "Warehousemen, wharfingers, and forwarders of freight, so long as they confine themselves to the business which their names import, cannot be held liable as common carriers. If goods are deposited with them merely as the initiatory step towards starting them *in itinere*, they having undertaken to do no

more than to safely keep them and forward them when opportunity offers, and being in no wise interested in their carriage after delivery to the carrier, it would be contrary to the well-settled principles of the law to hold them to the responsibilities of common carriers. But if they combine the two characters, treating the deposit with them as being merely for the convenience of further carriage, or to encourage or promote their business as common carriers, they will be held to a strict liability as such from the time of the delivery to them. In such cases the deposit is a mere accessory to the carriage, and for the purpose of facilitating it, and the liability as carrier begins with the receipt of the goods." And Bouvier defines a forwarder as "a person who receives and forwards goods, taking upon himself the expense of transportation, for which he receives a compensation from the owners, but who has no concern in the vessels or wagons by which they are transported, and no interest in the freight." Whether a person is a common carrier depends wholly upon whether he holds himself out to the world as such, and he can hold himself out as a common carrier by engaging in the business generally, or by announcing or proclaiming it by cards, advertisements, or by any other means that would let the public know that he intended to be a common or general carrier for the public. *Railway Co. v. Nichols*, 9 Kan. 252, 253. Were the appellees acting in the premises as common carriers or forwarders merely? This question should have been submitted to the jury with proper instructions. The error of the court in not doing so was prejudicial to appellant, as his counter-claim rested upon the alleged facts that appellees were common carriers and accordingly received and carried the beer from Weston to Leadville, and upon the law imposing the liability upon common carriers in such cases. This court has defined such liability in the case of *Express Co. v. Carroll*, 7 Colo. 43.

The judgment should be reversed and the case remanded.

DE FRANCE and RISING, CC., concur.

PER CURIAM. For the reasons assigned in the foregoing opinion the judgment is reversed and the cause remanded.

*Reversed.*