J. W. KIRBY et al., Respondent, v. ADAMS EXPRESS COMPANY, Appellant.

June 6, 1876.

1. All persons following the occupation of carrying goods by land or water are common carriers.

24

2. A common carrier, by special contract, can limit his liability at common law; but, notwithstanding the special contract, he remains a common carrier with his common-law liability restricted, in so far as it may be lawfully restricted by the contract.

3. A clause in a contract between an express company and a shipper stated that goods shipped are of the value of $50, unless their value should be inserted in the contract, and that the company, in case of loss, would not be liable for more than $50 unless the value was so inserted, and the value of the goods was not inserted. *Held,* that this did not relieve the company from liability for the full value of the goods if lost through its fault, and that a presumption of negligence arose from the mere fact of loss.

4. A common carrier may, by contract, restrict his liability as an insurer, but he will not be permitted to assume the position of an ordinary bailee; the law still holds him to a higher degree of care than that required of a private carrier, and the rule as to the burden of proof still prevails; and, if the goods are lost, whatever may have been the agreement with the shipper, the law will presume that they were lost through the fault of the carrier, unless the carrier show the contrary.

5. As the law compels the carrier to take goods for transportation, it may be difficult to see what consideration there is to support a contract for a release of the carrier from responsibility, yet it is a matter with which the courts can no longer deal.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

*S. M. Breckinridge,* for appellant, cited: Railroad Co. v. Lockwood, 17 Wall. 357; Wolf v. American Express Co., 43 Mo. 426; Behme v. Adams Express Co., 25 Md. 328; Boorman v. American Express Co., 21 Wis. 152; Newburger *et al.* v. Howard & Co.'s Express, 6 Phila. Rep. 174; Newstadt v. Alvin Adams, 5 Duer, 43.

*Silas B. Jones,* for respondents, cited: Levering v. Union Trans. & Ins. Co., 42 Mo. 88; Wolf v. American Express Co., 43 Mo. 421; Davidson v. Graham, 2 Ohio St. 131; Graham v. Davis, 4 *Ib.* 363; Bondenham v. Bennett, 4 Price, 31; Beck v. Evans, 16 East, 244; Chitty on Car. 141; 2 Stark. on Ev. 205; Story on Bail., sec. 590; American Express Co. v. Sands *et al.*, 55 Pa. St. 140; Orndork & Co. v. Adams Express Co., 3 Bush, 194; Southern Express Co. v. Moon, 39 Miss. 822.

BAKEWELL, J., delivered the opinion of the court.

Respondents sue for the value of a trunk and contents, delivered by respondents to appellant for transportation. At the time of the delivery of the trunk, appellant delivered and respondents accepted a receipt, being a printed form used by the express company, which, the blanks being filled up, read as follows :

"Adams Express Company.   Great Eastern, Western, and Southern Express Forwarders.   Form 14.   [Domestic Bill of Lading.]   St. Louis, Mo., December 24, 1872.   Received of Prince & Kirby, one trunk.   Value, $——.   For which this company charges $——.   Marked J. W. Kirby & Co., Bethel Station, Tenn.

" Which it is mutually agreed is to be forwarded to our agency nearest or most convenient to destination only, and there delivered to other parties to complete the transportation.

" It is part of the consideration of this contract, and it is agreed, that the said express company are forwarders only, and are not to be held liable or responsible for any loss or damage to said property while being conveyed by the carriers to whom the same may be by said express company intrusted, or arising from the dangers of railroads, ocean, or river navigation, steam, fire in stores, depots, or in transit, leakage, breakage, or from any cause whatever, unless in every case the same be proved to have occurred from the fraud or gross negligence of said express company or their servants ; nor in any event shall the holder hereof demand beyond the sum of fifty dollars, at which the article forwarded is hereby valued, unless otherwise herein expressed, or unless specifically insured by them, and so specified in this receipt, which insurance shall constitute the limit of the liability of the Adams Express Company. And if the same is intrusted or delivered to any other express company or agent (which said Adams Express Company are hereby authorized to do), such person or company so selected shall be regarded exclusively as the

agent of the shipper or owner, and as such alone liable, and the Adams Express Company shall not be, in any event, responsible for the negligence or non-performance of any such company or person ; and the shipper and owner hereby severally agree that all the stipulations and conditions in this receipt contained shall extend to, and inure to the benefit of, each and every company or person to whom the Adams Express Company may intrust or deliver the above-described property for transportation, and shall define and limit the liability therefor of such other company or person. In no event shall the Adams Express Company be liable for any loss or damage, unless the claim therefor shall be presented to them in writing at this office, within thirty days after this date, in a statement to which this receipt shall be annexed. All articles of glass, or contained in glass, or any of a fragile nature, will be taken at shipper's risk only ; and the shipper agrees that the company shall not be held responsible for any injury by breakage or otherwise, nor for damage to goods not properly packed or secured for transportation. It is further agreed that said company shall not in any event be liable for any loss, damage, or detention caused by the acts of God, civil or military authority, or by rebellion, piracy, insurrection, or riot, or the dangers incident to a time of war, or by any riotous or armed assemblage. If any sum of money, besides the charge for transportation, is to be collected from the consignee on delivery of the above-described property, and if the same is not paid within thirty days from the date hereof, the shipper agrees that this company may return said property to him at the expiration of that time, subject to the conditions of this receipt, and that he will pay the charges for transportation both ways, and that the liability of this company for such property, while in its possession for the purpose of making such collection, shall be that of warehousemen only. For the company. Freight, $——.

"E. W. HASSELL."

Respondents declare on the receipt, allege that appellant was a common carrier, and that the trunk and contents were reasonably worth $160, and were lost through the carelessness and improper conduct of appellant.

Appellant denies the loss of the trunk and contents; denies all carelessness and improper conduct; denies that it was a common carrier; asserts that it received the trunk and contents under the agreement sued on, and subject to its express conditions, amongst which were those that it accepted no other liability than that of a forwarder; and that, as the value of the trunk and contents were not stated, it was in no event to be held liable for more than $50, at which sum the parcel was valued.

The replication denies all new matter in the answer.

The court, at the instance of respondents, granted instructions which substantially declare : That appellant—if, being publicly engaged in transporting goods for hire, it received respondents' goods for transportation—was a common carrier in this case ; that, if appellant was a common carrier, it must account for these goods, and, if they were lost while in its possession as a common carrier, the law presumes they were lost through the carelessness and negligence of appellant, unless it show the contrary ; and that, if appellant was a common carrier, and the goods were lost through its carelessness and negligence, then it was liable for the full value of the goods.

Appellant asked instructions limiting the recovery to $50, stating that, if the receipt contained no specified value of the goods, only $50 could be recovered, laying the burden of proof of carelessness on respondents, and to the effect that, under the contract, appellant had no liability but that of a forwarder.

These instructions were refused, but the following instructions were granted at defendant's instance :

"If the jury believe from the evidence that the receipt in evidence was given by defendant to the plaintiffs at the

time said goods were shipped, and for the same, and was accepted by plaintiffs, then said receipt constitutes the contract under which the goods were received, and the parties were bound by the terms thereof.''

There was a verdict and judgment for $151.75, the full value of the trunk and contents. The case is brought here, by defendant, by appeal.

It is strongly insisted by appellant that this is not a question of notice limiting the carrier's liability; that the receipt executed by appellant, and deliberately, and with full knowledge and understanding of its contents, and freely, accepted by respondents, constituted a contract between them, to the terms of which they are, both by reason and authority, to be strictly held. The value of the contents was not disclosed, and, as in the analogous case of a valued policy, the amount of risk being fixed by agreement, that amount is the measure of recovery in this case.

The point made in the case is one of the greatest importance to the business community. The decisions on the subject have not been uniform, and are not now accordant; and the current of decisions and legislative enactments, both in England and America, shows that the most opposite views of public policy in this matter have prevailed amongst legislators and jurists at different periods.

There is no doubt at all that, wherever the common law prevails, the rule that all persons following the occupation of carrying goods for hire, by land or water, are common carriers, and liable, except for inevitable accidents, has been maintained in all its most wholesome vigor. But the doctrine that special acceptances limit responsibility of carriers—at first timidly urged, and viewed with disfavor—at last, by repeated adjudications, grew into a system, and this under the observation and sanction of the legislature, which, by repeated enactments, from 2 George II. to 53 George III., allowed the rule to be relaxed by special contracts created by bills of lading, until, in this century,

by reason of the practice of sending small parcels of very great value, the responsibility of carriers having greatly increased, an act was passed in England that no carrier shall be liable for the loss of articles of that description unless the value is declared at the time of delivery, and an increased price paid for carriage.

The common-law rule was: "A politic establishment contrived by the policy of the law," as Lord Holt declared, "for the safety of all persons the necessity of whose affairs oblige them to trust this sort of persons, that they may be safe in their way of dealings;" and Lord Mansfield said that, "to prevent litigation, confusion, and the necessity of going into circumstances impossible to be unraveled, the law presumes against the carrier, unless he shows the loss was caused by the King's enemies or a tempest; and in case of robbery it holds him liable, of which the true reason is, for fear it may give room for collusion—that the carrier may contrive to be robbed on purpose to share the spoil."

In the case at bar the carrier seeks, by the terms of the receipt which he gives, to limit his responsibility to the sum of $50, and to change his common law-liability, which is that of an insurer, to the liability of an ordinary bailee for hire.

In *Gould* v. *Hill*, 2 Hill, 623, it was decided in New York that this cannot be done, and in Georgia and Ohio the same doctrine was laid down, but the Supreme Court of the United States, in *N. J. Steam Navigation Company* v. *Merchants' Bank*, 6 How. 344, denied the doctrine of *Gould* v. *Hill*, which was subsequently overruled in New York; and it is now almost universally held in America that such contracts are valid. The strict rule has also been abandoned in England, and such contracts are sanctioned there. And the doctrine is now too well established in this state to be shaken that a common carrier can by special contract limit his liability at common law. *Read* v. *St. Louis, Kansas City & Northern Railway Company*, 60

Mo. 199. As the law compels the carrier to take the goods, and he is liable to an action if he refuses, it may be difficult to see what consideration there is to support a contract by which the bailor agrees to release the bailee from a responsibility imposed by law; and it will still be thought by many that the established doctrine opens a wide door for theft and perjury—gives to the carrier every advantage in a suit, and puts the carrying trade of the country at his mercy. If the present rule, however, is against public policy, it is a matter with which the courts can no longer deal. Recent legislative enactments in England have brought about, to a great extent, a return to the earlier principles of the old decisions, which hold the carrier to the strictest responsibility; and in this country, as is said by the learned judge who delivered the opinion of the court in *Southern Express Company* v. *Moon*, 39 Miss. 831, "consignors have only to insist on a simple receipt for their goods, offering to pay reasonable compensation, and steadily refusing the artfully prepared receipts limiting the carrier's liability and depriving the consignor of his legal rights, to restore in practice the security and safety which the law affords. They will, in this manner, avoid the losses which scheming corporations, under the guise of special agreements, are daily inflicting upon them." The possibility of such action in isolated cases, by individual consignors, will be found in practice, however, no efficient remedy against an increasing evil.

Without denying that cases may daily arise in which these printed receipts, thrust into the hands of a hurried traveler,. constitute no contract limiting the carrier's liability, for want of intelligent, free, and fair assent, there can be no question that the liability of appellant in this case was in fact limited by the receipt received by the consignor. Appellant remained a common carrier, but, in this instance, his common-law liability was restricted—so far as it might be lawfully restricted—by contract.

But it was not possible for appellant, by the terms of this contract, to shield himself from liability for his own carelessness and neglect in carrying these goods. No bailee for hire, I think, can limit his liability so as to escape responsibility for his own neglect; certainly a carrier cannot. Had a loss occurred without any fault of the carrier, under the contract sued on, his liability was limited to $50; but, where it appears that the loss occurred by his fault, he must pay the full value of the goods; otherwise, the law would become a shield for the grossest fraud.

There was, I think, sufficient proof of actual negligence in this case to warrant the finding of the jury; but that is not material, because a presumption of negligence would arise from the mere fact of the loss. There can be but little doubt as to what is the doctrine in this State on the subject. A common carrier may, by contract, restrict his liability as an insurer, but his duties as a common carrier do not originate in contract, and he will not be permitted, whilst acting as a common carrier for hire, to shirk the responsibilities which the law affixes to his calling, and to assume the position of an ordinary bailee. The law still holds him to a higher degree of care than that required of a private carrier; and the rule of evidence which, for the wisest reasons, has been adopted in his regard, must still prevail. The consignor does not accompany his goods; the carrier does. The carrier must account for them, and if they are lost, whatever agreement he may have made with the owner, the law will presume that they are lost by his fault, and, in the absence of testimony to rebut this presumption, he must pay their value. This doctrine seems to be clearly laid down in *Levering* v. *Union Transportation and Insurance Company*, 42 Mo. 88, and the point is expressly decided in *Ketchum* v. *American Merchants' Union Express Company*, 52 Mo. 391.

We see no error committed by the Circuit Court of which appellant can complain. The instruction given for defend–

ant was liable to be misunderstood, to the prejudice of respondents, and should not have been given without modification; but its apparent inconsistency with the law, as correctly embodied in the instructions given for respondents, is not an error affecting the appellant.

The judgment of the Circuit Court is affirmed. All the judges concur.