WILLIAM L. BALLOU *vs.* WILLIAM H. EARLE & HENRY PREW, Copartners, as the Earle & Prew Express Company.

The receipt given by an express company as common carriers for a package received by it for transportation limited the liability of the company to fifty dollars, " at which the article forwarded is hereby valued unless otherwise herein expressed." The package was lost by the negligence of the express company.

*Held*, that the receipt was a valid contract between the shipper and the carrier, and that fifty dollars was the limit of the carrier's liability in the absence of a declaration of value higher than that sum in the receipt.

In the absence of fraud, concealment, and improper practices, the legal presumption is, that stipulations limiting the common law liability of common carriers contained in a receipt given by them for freight are known and assented to by the shipper.

Defendants joined in an action under Pub. Stat. R. I. cap. 204, § 32, and found not to be parties to the contract on which the action is brought, will recover each his separate judgment for costs against the plaintiff.

ASSUMPSIT for the value of a package lost by the defendants as common carriers. Heard by the Court, jury trial being waived.

*July* 25, 1891. TILLINGHAST, J. This is *assumpsit* to recover

the sum of $579, being the value of a box of diamonds which the plaintiff delivered to the servant and agent of the defendants to be by them transported by express to New Bedford, in the State of Massachusetts. Jury trial is waived, and the case is tried to the court on the law and the facts. The defendants, who are common carriers of merchandise for hire, received from the plaintiff at Providence, on the 26th day of July, 1890, a package containing diamonds of the value aforesaid, to be by them delivered to C. W. Haskins, at New Bedford, Massachusetts.

The plaintiff had, and for a considerable time previous to the above named date had had, in his possession and constant use, a book of the defendants' contract receipt blanks, at the top of each page of which was printed what purports to be a mutual agreement between the shipper and the common carrier, which agreement, in so far as it is material for our present consideration, provides that the defendants " are not to be held liable or responsible for any loss or damage to said property, . . . unless in every case the same be proved to have occurred from the fraud or gross negligence óf said express company, or their servants, nor in any event shall the holder hereof demand beyond the sum of fifty dollars, at which the article forwarded is hereby valued, unless otherwise herein expressed, or unless specially insured by them and so specified in this receipt, which insurance shall constitute the limit of the liability of Earle & Prew's Express."

One of these blanks the plaintiff filled out for the addressed package in question, but gave no value thereof, although there was a blank column in said receipt marked " *value.*" This receipt was signed by the defendants' agent when the plaintiff gave the package to the agent.

The defendants had no knowledge of the contents or value of said package except as stated in said receipt, at the time of its delivery to them, nor did they make any inquiry of the plaintiff concerning the same.

This package was lost by the negligence of the defendants' servant before it reached their office, and said defendants admit their liability therefor, under said agreement, and offer to pay the said sum of fifty dollars, which, they contend, is the limit of their liability. The plaintiff testifies that his reason for not giving any

value to the package was because the expressage was to be paid by the consignee. The defendants, on the other hand, testify that the reasons given them by the plaintiff for not giving any value to the package in said receipt were, that it cost more money, and that the consignee had previously complained of the charges of expressage in cases where the values had been given, and that he adopted this mode to lessen said charges.

We think it is very evident that the purpose of the plaintiff in not giving any value to the package was to save, either to himself or to the consignee, and it matters not which, the additional expressage which would have been charged by the defendants, if the real value had been given; for it must be presumed from the terms of the receipt, that as the defendants assume a liability only to the extent of the valuation therein named, the rate, of expressage is graduated by said valuation.

Under this state of facts, the plaintiff's final contention, which logically should be the first, and hence we will consider it first, is that the express assent of the owner of the goods to the restrictions of the carrier's liability must be found, to give effect to it in any case.

We think the decided preponderance of the authorities is to the contrary; and that the well-settled rule now is, that in the absence of fraud, concealment, or improper practice, the legal presumption is, that stipulations limiting the common law liability of common carriers, contained in a receipt given by them for freight, were known and assented to by the party receiving it. *Belger* v. *Dinsmore*, 15 N. Y. 166; *Steers* v. *Liverpool, N. Y. & P. Steamship Co.* 57 N. Y. 1; *Harris* v. *Great Western Railway Co.* L. R. 1. Q. B. Div. 515; *Germania Fire Ins. Co.* v. *Memphis & C. R. R. Co.* 72 N. Y. 90; *Quimby* v. *Boston & Maine R. R. Co.* 150 Mass. 365; *Burke* v. *South Eastern Railway Co.* L. R. 5 C. P. Div. 1; *Maghee* v. *Camden & Amboy R. R. Co.* 45 N. Y. 514; *Grace* v. *Adams*, 100 Mass. 505; *Monitor Mut. Fire Ins. Co.* v. *Buffum*, 115 Mass. 343; *Hill* v. *Syracuse, Bing. & N. Y. R. R. Co.* 73 N. Y. 351. For a full discussion of the contrary doctrine, see *Hollister* v. *Nowlen*, 19 Wend. 234, and cases cited.

In the case at bar a printed *facsimile* of the receipt in question

is before us, which shows that the terms and conditions upon which the defendants received the goods in question must have been well known to the plaintiff.

And more especially is this to be taken for granted from the fact that a book of the defendants', filled with receipt blanks, identical with this, was in the plaintiff's possession, and in almost daily use by him.

From an examination of said *facsimile* it is evident that there was not only no attempt to conceal the terms and conditions of the bailment on the part of the defendants, but on the other hand that it had been their purpose to make the same specially prominent and noticeable.

It is all printed on one side of the paper, and at the top thereof it is headed by the caution, printed in bold type, "*Read the Conditions of this Receipt,*" and all the printed matter precedes the signature of the agent of the defendants.

We think, therefore, that the receipt in question ought to be regarded as having received the assent of the plaintiff, and as being, as its language purports, the mutual agreement of the parties touching the package in question.

Having found, then, that there was an agreement between the parties as to the limit of the defendants' liability in case of loss, we come to the main question in the case, viz.: Was said agreement valid and binding upon the parties thereto? Or, to state the question more broadly: To what extent is a common carrier entitled to contract in limitation of his common law liability? This is a question, in so far as it applies to carriers by land, upon which there has been great contrariety of opinion in different courts, the earlier cases holding that it was against public policy, and hence impossible for common carriers to guard themselves by any stipulations whatever, against liability from loss arising from any other cause than the act of God or the public enemy. This question is discussed in Edwards on Bailments, § 552, and cases cited in note 5, while the later cases have materially modified this rule in the carrier's favor, and permitted him not only to contract so as to change the extent of his liability as fixed by the common law, but such contracts, when made with his employer, became almost entirely the measure of his responsibility. "And this custom," says

Hutchinson on Carriers, § 119, "has become so universal in transactions with carriers, that his liability may now be said to depend almost exclusively upon contract. He still stands, however, in the relation of common carrier to the goods intrusted to him, notwithstanding his contract, however much it may lessen his common law liability, and he cannot, even by the most express contract, divest himself of that character and change it to that of a mere private carrier or ordinary bailee." *Davidson* v. *Graham,* 2 Ohio St. 131, 140; *Railroad Company* v. *Lockwood,* 17 Wall. 357; *Hooper* v. *Wells, Fargo & Co.* 27 Cal. 11; *Christendon et al.* v. *American Express Co.* 15 Minn. 270; *Bank of Kentucky* v. *Adams Express Co.* 3 Otto, 174, 180; *Kirby* v. *Adams Express Co.* 2 Mo. App. 369; but see *American Express Co.* v. *Sands,* 55 Pa. St. 140; *Grogan & Merz* v. *Adams Express Co.* 114 Pa. St. 523.

Without attempting a review of the conflicting authorities upon the question before us, which would answer no useful purpose here, we will only say that upon an examination thereof we have come to the conclusion that the decided weight of the authorities, as well as the better reason, favors the rule that a common carrier may, to a great extent at least, contract in limitation of his common law liability, "provided," as stated in *Express Company* v. *Caldwell,* 21 Wall. 264, "the limitation be such as the law can recognize as reasonable and not inconsistent with sound public policy."

The shipper and the common carrier are thus authorized to enter into an express agreement within certain limits, as to the terms upon which the latter will transport and convey for the former a certain article of personal property of an agreed value to a designated place for an agreed price. We fail to see that the recognition of the validity of such an agreement is violative of any sound rule of public policy. Indeed, it seems to us that public policy requires the upholding of such an agreement as tending to the honest disclosure of value on the part of the shipper, and the exercise of that degree of diligence on the part of the carrier which is commensurate with the value of the particular article conveyed, and the price paid for such conveyance. To illustrate : —

A. has a box of tinware of the value of five dollars, which he wishes to send to Boston by B., a common carrier. The box is

delivered to B. under an agreement similar to the one before us, no information being given as to the contents of said box.

What is the degree of care which B. is expected to exercise in the transportation of this box? Manifestly, that degree of care which is commensurate with a box whose value does not exceed that stipulated in the contract, to wit, $50.

B.'s maximum liability in case of loss being known to him beforehand, he will naturally exercise such a degree of care as would ordinarily insure the safe delivery at its destination of an article of this value. Moreover, he is only paid for assuming a risk to the extent of $50, and he has graduated his charge for carriage accordingly.

Such an agreement certainly strikes one as eminently fair and reasonable. Neither party is deceived or misled thereby. The shipper, on the one hand, is insured of the safe delivery of his goods at their destination, or their value in money, in case of loss, and the carrier, on the other hand, proportions his care to the liability which he has assumed.

Both parties thus act understandingly and intelligently; there is little opportunity for fraud on the part of the shipper, and none for overcharge on the part of the carrier.

To illustrate again : A. wishes to send a box of diamonds, valued at $500, to Boston, Mass., and employs B., a common carrier, to transport the same thence under an express agreement, which stipulates, amongst other things, that the value thereof is $50, the charge for expressage being based upon that valuation.

As in the former case, B. assumes, and has the right to assume, that the value of this package does not exceed the sum of $50, and he therefore proportions his care accordingly.

The package is lost by B., whereupon A. seeks to hold him liable for the *actual* value of said package, which was many times larger than that agreed upon.

B. was only paid for the care and transportation of a package of the value of $50, and the degree of care which he used was sufficient for a transaction of that sort, while it was quite insufficient for a transaction of the sort which he was induced by misrepresentation on the part of A. to undertake.

Had he been apprised of the actual value of this package, he

would have exercised that degree of care which was commensurate therewith, and would also have graduated his charge accordingly.

To allow A. to repudiate his contract with B. in case of loss, and hold the latter to his strict common law liability, under the circumstances, is little less than to permit him to perpetrate a fraud under the guise of enforcing a legal right.

If this illustration fairly represents the case at bar, and it seems to us that it does, it shows the unreasonableness and injustice of the rule of liability contended for by the plaintiff. But the main contention of the plaintiff is, that an express company cannot limit its liability for loss of goods occasioned by its own negligence. And in support thereof he cites the following cases: *Grogan & Merz* v. *Adams Express Co.* 114 Pa. St. 523; *Brown* v. *Adams Express Co.* 15 W. Va. 812; *Martin* v. *B. & O. R. R. Co.* 14 W. Va. 180, 191; *Newborn* v. *Just*, 2 Car. & P. 76; *New Jersey Steam Navigation Co.* v. *Merchants' Bank*, 6 How. U. S. 340; *Snider* v. *Adams Express Co.* 63 Mo. 376, 383; *Union Express Co.* v. *Graham*, 26 Ohio St. 595, 598; *Mich. Central R. R. Co.* v. *Hale*, 6 Mich. 243; *Western Transportation Co.* v. *Newhall*, 24 Ill. 466; *Graham & Co.* v. *Davis & Co.* 4 Ohio St. 362; *Muser* v. *American Express Co.* 1 Federal Reporter, 382; *Southern Express Co.* v. *Seide*, 7 Southern Reporter, 547.

These cases undoubtedly sustain the position of the plaintiff in this respect; and we are not only not disposed to question their authority upon this point, but to agree entirely therewith.

We do not think that it is competent for a common carrier to stipulate for exemption from loss occasioned by his own negligence or that of his servants. Such an exemption is not just and reasonable in the eye of the law. Nor is it necessary for us to so hold in order to sustain the contract under consideration. For, as stated by Blatchford, J., in *Hart* v. *Pennsylvania R. R. Co.* 112 U. S. 331, 340, "The limitation as to *value* has no tendency to exempt from liability for negligence. It does not induce want of care. It exacts from the carriers the measure of care due to the value agreed on. The carrier is bound to respond to that value for any negligence. The compensation for carriage is based on that value. The shipper is estopped from saying that the value is greater.

The articles have no greater value for the purposes of the contract of transportation, between the parties to that contract. The carrier must respond for negligence up to that value. It is just and reasonable that such a contract, fairly entered into, and where there is no deceit practiced on the shipper, should be upheld. There is no violation of public policy. On the contrary, it would be unjust and unreasonable, and would be repugnant to the soundest principles of fair dealing, and of the freedom of contracting, and thus in conflict with public policy, if a shipper should be allowed to reap the benefit of the contract if there is no loss, and to repudiate it in case of loss."

The case from which we have thus quoted was one in which the loss happened from the negligence of the defendant.

The court had previously declared in the same case, p. 338, that " It is the law of this court that a common carrier may, by special contract, limit his common law liability; but he cannot stipulate for exemption from the consequences of his own negligence, or that of his servants," thus expressly affirming the doctrine previously laid down by that learned court in *New Jersey Steam Navigation Co.* v. *Merchants' Bank*, 6 How. U. S. 344; *York Company* v. *Central Railroad*, 3 Wall. 107; *Railroad Company* v. *Lockwood*, 17 Wall. 357; *Express Company* v. *Caldwell*, 21 Wall. 264; *Railroad Company* v. *Pratt*, 22 Wall. 123; *Bank of Kentucky* v. *Adams Express Co.* 93 U. S. 174; *Railway Company* v. *Stevens*, 95 U. S. 655.

But, although the loss did occur from the negligence of the defendant, the court upheld the agreement as to the *value* of the property, on the ground, as forcibly stated in the opinion, that " There is no justice in allowing the shipper to be paid a large value for an article which he has induced the carrier to take at a low rate of freight on the assertion and agreement that its value is a less sum than that claimed after a loss. It is just to hold the shipper to his agreement, fairly made, as to value, even where the loss or injury has occurred through the negligence of the carrier. The effect of the agreement is to cheapen the freight and secure the carriage, if there is no loss; and the effect of disregarding the agreement, after a loss, is to expose the carrier to a greater risk than the parties intended he should assume.

"The agreement as to value, in this case, stands as if the carrier had asked the value of the horses, and had been told by the plaintiff the sum inserted in the contract."

The rule laid down in *Grogan & Merz* v. *Adams Express Co.* 114 Pa. St. 523, a case much relied on by the plaintiff, that " an express company cannot, by special contract, or special acceptance, limit its liability for loss of goods, resulting from the negligence of the company or its servants," is not in conflict with the case just quoted from, upon this point. And, with all due respect to the learned court which rendered this decision, we think that it misapprehended the decision in *Hart* v. *Pennsylvania R. R. Co. supra*, in declaring that that case had decided that a common carrier could limit its liability, even as against its own negligence. The real distinction between these two cases, as it seems to us, is not in the rule adopted by each, but in the application thereof.

In the Grogan case the court holds that an agreement as to value in case of loss by negligence is not binding on the parties, on the ground, as we understand the decision, that to hold the contrary would be to uphold the carrier in stipulating against his own negligence, although it holds at the same time that an agreement as to value " *would* be a protection against liability beyond that amount *except* for negligence."

In this respect the court followed the case of *American Express Co.* v. *Sands*, 55 Pa. St. 140, and *Farnham* v. *The Camden & Amboy R. R. Co.* 55 Pa. St. 53. That is to say, these cases hold that an agreement as to value in case of loss is valid and binding, excepting only where the loss is occasioned by the negligence of the common carrier or his servant. While in the Hart case, before referred to, the court holds that the agreement as to value is also valid and binding where the loss *is* occasioned by the negligence of the common carrier, and that so to hold " has no tendency to exempt from liability for negligence."

The reasoning in the last-named case is cogent and convincing, and we are disposed to adopt the same in preference to the authorities which hold to the contrary. See, also, *Oppenheimer* v. *U. S. Express Co.* 69 Ill. 62 ; *Kallman* v. *U. S. Express Co.* 3 Kans. 205 ; *Brehme* v. *Adams Express Co.* 25 Md. 328 ; *Snider* v. *Adams Express Co.* 63 Mo. 376 ; *Levy* v. *Southern Express*

*Co.* 4 S. Car. 234 ; *Boorman* v. *American Express Co.* 21 Wisc. 154.

We therefore decide that it was competent for the parties to agree as to the value of the package in question in case of loss by negligence, and that, having thus agreed, they are bound thereby. Judgment must therefore be entered for the plaintiff for the sum of fifty dollars.

*Stephen A. Cooke, Jun., & Louis L. Angell,* for plaintiffs.

*Arnold Green,* for defendants.

The above action was brought against six defendants, who were joined under Pub. Stat. R. I. cap. 204, § 32.[1] At the trial it appeared that only two were parties to the contract. On hearing as to the judgment to be entered, the court decided, August 1, 1891, that judgment should be entered in favor of the plaintiff against these two for $50 and costs, and that each of the other four defendants should have his separate judgment against the plaintiff for costs.

---

[1] As follows:—

SECT. 32. The plaintiff may join, as defendants in the same action, all or any persons severally or jointly and severally liable in any contract or specialty, including any or all of the parties to a bill of exchange or a promissory note, and in every such action the judgment shall be rendered against such of the defendants only as shall be liable therein, and such, if any, as shall not be liable, shall recover costs against the plaintiff ; and the court may, upon motion of a defendant in any such case, consolidate all pending actions or suits against the several parties to such contract or specialty, or may order other parties to the contract or specialty to be made defendants and to be summoned in answer to such action or suit; and in all such cases, while the property of a surety, indorser, or drawer may at any time be attached, that of the promisor, acceptor, or principal, properly before the court, if he has any within its jurisdiction, if not attached on the original writ, may be attached on mesne process or execution, and shall be first applied in the satisfaction of any judgment recovered therein.