JAMES LUPE, Respondent, v. ATLANTIC & PACIFIC RAIL-
ROAD COMPANY, Appellant.

### November 14, 1876.

1. In Missouri a railroad company, when engaged in the business of carrying cattle, is a common carrier.

2. The duties of a common carrier do not originate in contract; and, where his liability has been limited by contract, it is not necessary, in an action against the carrier, to sue on the contract, but it is incumbent upon him to show how far his liability was limited by such contract.

3. The liability of a common carrier cannot be so limited by contract as to shield him, where the loss was occasioned by his negligence; and, upon the question of negligence, the burden of proof is upon the carrier.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

*Litton & Portis*, for appellant, cited: Reed v. St. Louis, Kansas City & Northern R. R. Co., 59 Mo. 206; Bankard v. Baltimore & Ohio R. R. Co., 34 Md. 197; Lamb v. Camden & Amboy R. R. Co., 46 N. Y. 279; Cochrane v. Dinsmore, 49 N. Y. 249; Farnham v. Camden R. R. Co., 55 Pa. St. 53; Patterson v. Clyde, 57 Pa. St. 500; Railroad v. Reeves, 10 Wall. 176; Kansas Pacific R. R. Co. v. Reynolds, 8 Kan. 641; French v. Buffalo & Erie R. R. Co., 41 N. Y. 108; Lake Shore & Michigan Southern R. R. Co. v. Perkins, 25 Mich. 329; Michigan Southern & Northern Indiana R. R. Co. v. McDonough, 21 Mich. 165; Illinois Central R. R. Co. v. Owens, 53 Ill. 391; Wag. Stat., 1022, sec. 51; Dougherty v. Matthews, 35 Mo. 520; Harper v. Indiana R. R. Co., 44 Mo. 488; Eyerman v. Mt. Sinai Cemetery Assn., 61 Mo. 489; Kimball v. Rutland & Burlington R. R. Co., 26 Vt. 248.

*Davis & Smith*, for respondent, cited: Levering v. Western Transp. and Ins. Co., 42 Mo. 88; Wolff v. The American Express Co., 43 Mo. 421; Ketchum v. The American Merchants' Union Express Co., 52 Mo. 390; Read v. The St. Louis, Kansas City & Northern R. R. Co.,

60 Mo. 199; Virginia & Tennessee R. R. Co., v. Sayers, Am. Law Reg. (May, 1876) 297; York County v. Central R. R. Co., 3 Wall. 113; Steamboat New World v. King, 16 How. 469, 494; Railroad Co. v. Lockwood, 17 Wall. 357; Farnham v. Camden R. R. Co., 55 Pa. St. 62; Pennsylvania R. R. Co. v. Henderson, 51 Penn. 315; Davison v. Graham, 2 Ohio St. 131; Walsh v. Pittsburg, Ft. Wayne & Chicago R. R. Co., 10 Ohio, 76; Jones v. Voorhees, 10 Ohio, 145; 21 Ohio, 722; 19 Ohio, 221–260.

BAKEWELL, J., delivered the opinion of the court.

The petition in this case alleges that defendant was a common carrier of freight for hire; that on December 23, 1872, it received from plaintiff sixty-four head of cattle, the property of plaintiff, worth $100 per head, which, for a valuable consideration, it agreed to carry for plaintiff from Lamont, a station on the road of defendant, to St. Louis, in a reasonable time after the receipt thereof; that twenty hours was the usual and reasonable time occupied in the transportation of such freight between said points; that defendant did not deliver said cattle in a reasonable time, but conducted itself so carelessly and negligently in its business as carrier that said cattle were not delivered until fifty-eight hours after they were received by defendant, but detained for twenty-three hours at Tipton, and were there exposed and unprotected; and that defendant refused and neglected to take said cattle out of their cars and feed them, and refused to allow the servants of plaintiff to do so; that by reason of this delay and detention one of said cattle, worth $100, was wholly lost, another was damaged to the amount of $70, and the remaining fifty-eight head injured to the amount of $300. He asks judgment for $470.

There is a second count, alleging a similar state of facts: a delivery at Lamont, on January 22, 1873, of sixteen head of cattle, worth $80 per head, which were not delivered at St. Louis until forty-eight hours after the date

of shipment, and which, by the negligence of defendant, were detained eighteen hours at Kirkwood, by reason of which one of said cattle was a total loss, another was damaged to the amount of $52.50, and the remaining fourteen head were damaged to the amount of $140. Judgment, in this count, is asked for $370.

The answer of defendant denies all the material allegations of the petition, and further says that the cattle were not shipped under the contract set up in the petition, but under a written contract, by the terms of which defendant was released from all liability for the acts complained of.

There was a verdict and judgment for plaintiff, and the cause is brought here by appeal.

The evidence for plaintiff was to the effect that at the time of the first shipment, in December, the weather was extraordinarily cold ; that the machinery of the locomotive became disordered through the extreme cold ; that there was a consequent delay of several hours at Tipton, and another long delay at Bonnett's Mills whilst waiting for passenger trains ; that, during the time, plaintiff could not feed the cattle, as he was not allowed to take them out of the cars ; that they were much exposed and damaged, substantially as stated in the petition. As to the shipment in January, plaintiff showed that there was a very long delay at the tunnel in Kirkwood ; that the weather was unusually cold, and the snow very deep ; and that the cattle were damaged substantially as alleged in the petition. It was shown that the cattle belonged to plaintiff, and were shipped from his farm by his son, acting as his agent.

At the close of plaintiff's case, defendant offered an instruction in the nature of a demurrer to the evidence, which was refused.

Defendant then introduced in evidence two written instruments, signed by the respective agents of plaintiff and defendant, being the customary " live-stock contracts " of defendant, and which purport to set out the terms on

which these two lots of cattle were shipped and received. These contracts, which appear from the evidence to be printed blanks which are filled in with dates, etc., at the time of each shipment, provide that:

"When live stock is shipped, the owner or his agent is to feed, water, and take care of his stock at his own expense and risk, and is to assume all risk of injury or damage the animals may do to themselves or to each other, or which may arise from delay of trains. Agents of the company are not authorized to agree to forward live stock to be delivered at any specific time, nor are they authorized to agree to furnish cars for shippers to load at any stated time." It is further agreed: "That the party of the first part will forward to the party of the second part the stock mentioned, at specified rate per car, which is a special rate made expressly in consideration of this agreement, in consideration of which the party of the second part agrees to take care of said freight while on the trip, and load and unload the same at his own risk and expense, and that the party of the first part, and connecting lines over which such freight may pass, shall not be responsible for any loss, damage, or injury which may happen to such freight in loading, forwarding, or unloading; by suffocation or other injury *caused by overloading cars;* by escapes from any cause whatever; by any accident in operating the road, or delay caused by storm, fire, *failure of machinery* or cars, or *obstruction of track* from any cause, or by fire from any cause whatever, *or by any other cause except gross negligence;* and that said party of the first part and such connecting lines shall be deemed merely forwarders, and not common carriers, and only liable for such loss, damage, injury, or destruction of such freight as may be caused by gross negligence only, and not otherwise; and the said party of the second part agree to assume all risk of damage or injury to, or escape of, the live stock, which may happen to them while in the stock-yards awaiting shipment. It is also

further agreed between the parties hereto that the person or persons riding free under this contract, *in charge of stock, do so at their own risk of personal injury from whatever cause.*"

Defendant also introduced evidence tending to show that the delays which caused the injury were produced in one case by an accident to the locomotive, arising from the excessive cold, and in the other case by an unusual fall of snow.

There seems, however, to be no evidence in the case sufficiently accounting for the delay at Bonnett's Station, with the first shipment, during a whole night, nor for the repeated delays of the second shipment, which was detained, besides other long stoppages, an entire night at the tunnel at Kirkwood.

The court refused all instructions asked by defendant and by plaintiff, and of its own motion gave the following instruction :

" The jury are instructed that if they believe from the evidence that the cattle mentioned in the two causes of action stated in the petition were the property of the plaintiff, and were delivered by S. T. Lupe, then acting in behalf of plaintiff, to the defendant, for transportation to St. Louis, in consideration of certain freight money to be paid to said defendant, and that, at the respective dates at which said cattle were so delivered, the agreements read in evidence were respectively executed by said S. T. Lupe and agents of defendant, then the undertaking of the defendant to transport said cattle to St. Louis was made subject to the following conditions and limitations : The defendant was bound to transport said cattle to St. Louis within a reasonable time after their receipt by the defendant ; but the defendant was not liable for any injury which may have resulted to said cattle by overloading the cars in which they were placed (if the jury believe that any such cars were

overloaded), unless such overloading was caused by the defendant; and the defendant was not liable for any delay caused by the failure of machinery or obstruction of track from any cause other than that of want of care, or negligence, on the part of defendant. Hence, if the jury believe that the cattle of plaintiff were not transported to St. Louis within a reasonable time after their receipt, that by reason of the delay the cattle were exposed to danger and injury, and were injured by such delay, then the plaintiff is entitled to recover for such injury, unless the defendant has shown to the satisfaction of the jury that such delay was caused by a failure of machinery or by obstructions of the road of defendant which could not have been prevented by the exercise of due and proper care on the part of the defendant; or that, notwithstanding such delay, the injury did not result therefrom, but from the fact that the cars were overloaded by the plaintiff, if the jury so find from the evidence.''

'' The measure of the plaintiff's damages under either cause of action will be the difference in value of the cattle, as received, from such sum as the jury may believe from the evidence they would have been worth had they been received in good condition at St. Louis.''

1. There can be no question that it was competent for defendant, even though in the carrying of cattle it be a common carrier for hire, to limit its liability by special contract; and in this case the common-law liability of defendant was limited by written contract. But it was not possible for defendant, by any contract, to shield itself from liability for its own carelessness and neglect. These principles seem to be settled in Missouri, and are affirmed in *Kirby* v. *Adams Express Company*, 2 Mo. App. 369.

That was a case of loss of goods by a common carrier; and we there held that defendant, being a common carrier, though he might limit his liability by contract, could not assume the position of a mere ordinary bailee; that he is

still held to higher care than a private carrier; and that, in case of loss, there is a presumption of negligence, and the burden of proof, to show the proper care, is on the carrier.

Is the case at bar to be distinguished from that case? Is a railroad company carrying cattle in this State a common carrier? And, when it has limited its liability by contract, is the burden of proof of negligence thrown upon the plaintiff?

It has been held in Michigan (21 Mich. 165; 25 Mich. 329) that a railroad company carrying cattle does not assume the responsibilities of a common carrier as to such goods. But we do not know that such a distinction is elsewhere recognized, except where it may be created by statute. We are not convinced by the reasoning of the Michigan cases, and are of opinion that those who undertake the transportation of live stock take upon themselves all the liabilities of common carriers, and will not be permitted to avoid the responsibilities attached by law to their calling, so as to assume merely those of a private carrier or of an ordinary bailee, though they may by contract restrict their liability as insurers.

But, though a railroad company be a common carrier when engaged in the business of transporting cattle, it does not necessarily follow that, where by special contract it has restricted its liability, the burden of proof in a question of negligence remains with the carrier. Accordingly, in New York it is held that, when by contract with a common carrier he is exempted from liability for loss or damage, unless the same be proved to have occurred by fraud or gross negligence of him, his agents, or servants, the *onus* is on the plaintiff of proving such loss or negligence; and that the negligence must not merely be shown, but must appear to have contributed to the injury. *Cochran* v. *Dinsmore*, 49 N. Y. 249. And the same rule holds in Maryland. *Bankard* v. *Baltimore & Ohio R. R. Co.*, 34 Md. 197. And in Kansas it is said that, when the carriers have once suc-

ceeded in restricting their liability by special contract or acceptance, the burden of establishing the fact of negligence is already upon the plaintiff. *Kansas Pacific R. R. Co.* v. *Reynolds*, 8 Kan. 641. But the rule is otherwise in Missouri, and in *Ketchum* v. *American Merchants' Union Express Company*, 52 Mo. 395, it is expressly determined that, where a common carrier has limited his common-law liability by a special contract with the shipper, such contract cannot be pleaded as an exemption for a liability arising from negligence, and the *onus* is on the carrier to show the exercise of due care and vigilance to prevent the injury. On this point, then, we think that there was no error in the instruction given by the court below.

2. We are next told that the instruction given as to the measure of damages is erroneous for two reasons: first, because it makes no allowance for damages sustained by excusable delays; and, second, because it makes no allowance for inevitable shrinkage. As to the first objection, we do not see that it appears from the evidence that any delay was excusable. A portion of the machinery of the locomotive broke, and the weather was very cold; but it does not appear that this accident might not have been prevented by due care, nor that the machinery was in good order at the beginning of the trip; nor is there any evidence that the snow necessarily delayed the train. It was for defendant to show what portion of the delay, if any, was excusable; and this it neglected to do. As to the second objection, we see nothing in it, because the evidence is that the cattle would have arrived in " good condition," in spite of inevitable shrinkage, but for the unusual delay.

3. Lastly, it is urged that plaintiff should have sued on his written contract with the defendant, and, not having done so, should have been nonsuit. We do not think so. The written contract was a mere modification, in some respects, of the obligations of defendant to plaintiff, imposed upon defendant by law. Defendant's duties as a common

carrier do not originate in contract. Plaintiff might well sue defendant as a common carrier; and it was for defendant to show how far the contract was modified by the written acceptance.

We see no error warranting a reversal of the judgment, and it will be affirmed. All the judges concur.