J. P. McNEILL, MARK L. McNEILL and A. H. Mc-NEILL, a Partnership doing Business under the Name of J. P. McNEILL & COMPANY, Respondents, v. WABASH RAILWAY COMPANY, a Corporation, Appellant

St. Louis Court of Appeals.　Opinion Filed May 3, 1921.

1. **COMMON CARRRIERS: Misdelivery of Shipment: Mistake: Actions: Conversion: Common-law Liability.** In an action on the alleged breach of the common-law duty of defendant to deliver sheep to the consignee according to plaintiffs' direction, and defendant pleaded and introduced a written contract as a defense, *held*, plaintiffs were not compelled to sue on the written contract but could sue defendant on its common-law liability as a common carrier, and had a right to set up and prove that the written contract, by reason of a mistake made therein in the destination of the shipment, did not effectuate the intention of the parties, and therefore was not binding on them.

2. ————: ————: ————: **Knowledge of Ownership: Delivery of Breeding Ewes to Same Consignee at Wrong Yards: Liability.** Where a carrier had notice that the shippers were the owners of breeding ewes and that the consignee was merely their agent to receive the sheep at a certain stockyard, and reship them, the fact that the carrier wrongfully delivered them to the same agent at another yard where they were sold for immediate slaughter, did not discharge the carrier from liability as it was its duty to deliver the sheep according to the plaintiffs' direction, and to make the delivery at the place appointed by the plaintiffs.

207 Mo. App.—11

McNeill v. Wabash Ry. Co.

3. ———: ———: Acceptance of Proceeds of Sale of Slaughtered Breeding Ewes: Waiver: Question for the Jury. Where plaintiffs, the owners of breeding ewes, which had been delivered by the carrier to the wrong yards, where they were slaughtered, accepted the proceeds of their sale, and had no knowledge of the wrongful delivery of the sheep until after the sheep were slaughtered, and the wrongful act of the carrier, the cause of the loss to plaintiffs, had been committed when the plaintiffs accepted the proceeds of the sale of the sheep, the plaintiffs' act in accepting the proceeds of the sale did not constitute a waiver of the conversion as a matter of law.

4. WAIVER: When Question for the Jury. A waiver is a question of intention, and what constitutes waiver depends upon the facts of each particular case, and if reasonable minds might draw different conclusions from the facts, the question of waiver is one for the Jury and not for the court.

5. DAMAGES: Excessive Damages: Award Against Carrier for Conversion of Breeding Ewes: Not Excessive. In an action against a common carrier for damages for the conversion of a shipment of 218 breeding ewes, which as a result were sold for slaughter, the award of $2125 *held*, under the evidence, not excessive.

Appeal from the Circuit Court of Audrain County.—
*Hon. E. S. Gantt*, Judge.

AFFIRMED.

*N. S. Brown* and *A. C. Whitson* for appellant.

(1) In the absence of fraud or mistake the written contract may not be varied or contradicted by parole testimony. Mistake to avoid the contract must be mutual, and not negligently made. Where one signs a contract knowing its terms, or without knowing or without making any effort to know its contents, he will not be permitted to vary or contradict on the ground of mistake, and parole evidence is inadmissible to piece out or modify it, or subtract from the essential elements of the writing. Avery Co. v. Powell, 174 Mo. App. 628; 2 Pom. Eq. Jur. (3 Ed.), sec. 856; Marshall Hall Grain

Co. v. Merc. Co., 211 S. W. 725; Demming Inv. Co. v. Wasson, 192 S. W. 764; Hall v. Railway, 209 S. W. 582; Mfg. Co. v. Carle, 116 Co. App. 591; Crim v. Crim, 162 Mo. 544; Layson v. Cooper, 174 Mo. 211. (2) The carrier had the right to assume the consignee to be the owner, and when it was not found at the destination to deliver where found. Southern Express Co. v. Dickson, 94 U. S. 459, 24 L. Ed. 285; 1 Hutch. on Carriers, sec. 177; Smith, v. Railroad, 145 Mo. App. 394; Wichita Poultry Co. v. Railroad, 198 S. W. 83; 10 C. J., p. 249, n. 15. A delivery to and acceptance by the agent of the owner, releases the carrier from further liability. 10 C. J. 260, Sec. 373. Parker-Gordon Cigar Co. v. Railroad, 192 Mo. App. 86; Hardin Grain Co. v. Railway, 134 Mo. App. 681. (3) Whereby the negligence of the shipper or his agent the carrier is misled as to where or to whom delivery should be made, the carrier is excused from liability. The negligence of the agent of the shipper is the negligence of his principle and to permit a recovery against the carrier on account of the negligence of the agent, would be to permit the shipper to recover for his own negligence. 10 C. J. p. 267, sec. 380; M. K. & T. Ry. v. McFadin, 33 S. W. 853. (4) The plaintiffs by receiving the proceeds of the sale of the sheep from the consignee, waived the conversion by misdelivery, if such there was. The receipt of anything of value from the consignee out of the proceeds of' the shipment or in payment for the goods, after notice of the facts on which the conversion is claimed, waives the conversion. The shipper cannot accept a part and repudiate a part. Woolston v. Railroad, 177 Mo. App. 611; Peoples Bank v. Railway Co., 192 Mo. App. 631; Hayes v. Wells Fargo Express Co., 206 S. W. 229; Nanson v. Jacob, 93 Mo. 344. By accepting the proceeds of the sale plaintiffs either recognized their consignee as the agent to make the sale, or accepted the proceeds in satisfaction of the wrongful act alleged, and waived all claim for conversion and are estopped to set up the conver-

sion. Blowers & Co. v. Canad Pac. Ry. Co., 155 Fed. 935; Midland Linseed Co. v. Fire Proofing Co., 166 N. W. 573; Warehouse Co. v. Railway Co., 136 Pac. 34; 38 Cyc. 2042 & 2043, n. 44. (5) If the delivery to the consignee was unauthorized, the receipt of the proceeds ratified the unauthorized act. If a delivery and sale were unauthorized, the plaintiffs could have proceeded either against their consignee for conversion or against the defendant, and if against the defendant and a recovery was had, the defendant could have sued the consignee for the sheep or their value. Having elected to treat the title as passed by the sale of the consignee and accepting the proceeds, the fact may be set up as a complete defense by the consignee to any action of the defendant. Midland Linseed Co. v. Fire Proofing Co., supra; Blowers & Co. v. Railway, 155 Fed. 937. If the delivery was unauthorized, the receipt of the proceeds by the plaintiff from the consignee ratified the unauthorized act. Nanson v. Jacob, 93 Mo. 345 and cases cited under Points 4 and 5. (6) By accepting the benefits, the proceeds, the plaintiffs ratified and affirmed the transaction and waived their right, if any, for conversion, and are estopped and precluded from setting it up, and such estoppel does not depend on any change in the position of the defendant. Having waived their claim they are precluded from setting it up in this action. Hector v. Mann, 225 Mo. 246, 247; Lawson v. Cunningham, 204 S. W. 1105. (7) The measure of damages, if there was a conversion, is the value at the destination designated in the contract of shipment, and if the destination was such as contended by the plaintiffs, there was a total failure of proof as to damages. Blackmere v. Railway, 101 Mo. App. 562; Peoples Bank v. Railway, 192 Mo. App. 624.

*Abbott, Fauntleroy, Cullen & Edwards,* for respondent.

(1) The failure of the defendant to deliver the sheep at the place it was directed to deliver them renders

the carrier liable. Marshall & Michel Grain Co. v. K. C., F. S. & M. Ry. Co., 176 Mo. 491-492; Southern R. Co. v. Webb, 5 A. & E. Ann. Cas. 99; 10 C. J., sec. 384, p. 269; Cole v. Wabash etc. R. Co., 21 Mo. App. 443. (2) Through mistake and by reason of the failure of carrier's agent to write the contract as directed, or to change the body of it as he changed the outside, the written contract never became operative, and these facts may be shown in an action at law by oral testimony. Short v. Thomas, 178 Mo. App. 416-417; Barlow v. Elliott, 56 Mo. App. 374; Tapley v. Herman, 95 Mo. App. 543; Seiberling v. Tipton, 113 Mo. 373; Aetna Life Ins. Co. v. American Zinc, Lead & S. Co., 169 Mo. App. 550; 2 Williston on Contracts, p. 1227, sec. 634; Henn v. McGinnis, 165 N. W. (Iowa), 407; Fisher v. Trumbauer, 160 Iowa, 263; Rathke v. Tyler, 136 Iowa, 284, Zuspan v. Roy (Kan.), 170 Pac. 387; U. S. v. Charles, 74 Fed. 142; Rogsdale v. Turner (Iowa), 120 N. W. 109; Bleukiron v. Rogers (Neb.), 31 L. R. A. (N. S.) 127; Eldorado Jewelry Co. v. Dornell (Ia.), 133 N. W. 344; Indiana Railway Co. v. Fowler, 201 Ill. 152; 4 Am. & Eng. Ency. of Law (2 Ed.), 157; Alexander v. Bedford, 63 N. J. L. 307; 6 R. C. L., 41, 44; Western Roofing Tile Co. v. Jones, 26 Okla. 209; Cheney v. Eastern Transp. Line, 59 Md. 5661; Allen v. Chouteau, 102 Mo. 322; Green v. Cole, 103 Mo. 70; Aetna Ins. Co. v. Brannon (Tex.), 13 Ann. Cas. 1020, and note. (3) The plaintiff, having notified the carrier that it would claim damages from it, and by not accepting the proceeds of the sale in full of its claim, is not precluded from holding the carrier for a sum sufficient to cover his damages. Arrington v. Wilmington & Weldon R. R. Co. (N. C.), 72 Am. Dec. 559; Clark v. Chesapeake & O. Ry. Co. (W. Va.), 61 S. E. 364; McSwegan et al. v. Pennsylvania R. Co., 40 N. Y. Sup. 51; Johnson v. N. Y. Central (N. Y. Ct. of Ap.), 116 N. E. 1054 (affirming 148 N. Y. Sup. 1123); Louisville & A. R. Co. v. Hiram Blow & Co., 124 S. W. 392; L. Kemmel & Son v. Champlain Transp. Co., 105 Atl. 254; 1 Sedgwick on Damages, p. 88, sec. 55; 1 Sedgwick on Damages, pp. 92, 93, 94, sec. 58. (4) The

evidence failed to show any intention on the part of plaintiff to release the carrier, and in the absence of such an intention the carrier is not released because the damages are lessened by accepting part of the proceeds from a third party. Lake Shore v. McIntyre (Ind. App.), 108 N. E. 981; Atlantic Coast Line R. Co. v. Dahlberg Brokerage Co. 54 So. 171; Kewanee Private Utilities Co. v. Norfolk Southern R. Co., 88 S. E. 100.

BRUERE, C.—This is an action against the defendant, a common carrier, for alleged damages resulting to the plaintiffs by reason of the wrongful delivery by the defendant of certain live stock belonging to the plaintiffs. Plaintiffs recovered and defendant prosecutes the appeal.

The cause of action stated in the petition is as follows: "That on the 16th day of January, 1918, the plaintiffs delivered, and the defendant received, two hundred and eighteen head of sheep, being breeding ewes, which defendant agreed for in consideration of certain freight charges paid well and safety to carry from Mexico, Missouri, to St. Louis, Missouri, and at the latter place to deliver the same to the plaintiffs, or their agents or assigns; but the defendant, in violation of its said agreement and in total disregard of its duty as common carrier as aforesaid, so carelessly and negligently conducted itself in the premises that said property was not delivered to the plaintiffs, its agents or assigns, in St. Louis, Missouri, and that said defendant failed and neglected to deliver said property at its destination to the plaintiffs or to any one for them, but on the contrary the said defendant wrongfully diverted said stock to National Stock Yards, in the State of Illinois, and delivered them to a live stock commission firm, who were engaged in the business of receiving and selling such sheep for immediate slaughter, and that by reason of the delivery by the defendant of said sheep to said parties in the State of Illinois, and by reason of its fail-

ure not to deliver them to the point of destination, to-wit, St. Louis, Missouri, said breeding ewes and all of them were sold for immediate slaughter and were slaughtered, and that plaintiffs received on account of the sale and slaughter of said sheep the sum of seventeen hundred and ninety-nine dollars and eighty-one cents. That the total value of said sheep, as breeding ewes, was forty-three hundred and sixty dollars, and that by reason of the wrongful acts of the defendant above set forth plaintiffs were damaged in the sum of twenty-five hundred and sixty dollars and ninety cents.''

The answer contains a general denial and in addition pleads:

(1) That the sheep, referred to in plaintiffs petition, were received and transported by the defendant under and subject to the terms of a written contract, whereby it was agreed between the plaintiffs and defendant that defendant should transport the sheep from Mexico, Missouri, to the National Stock Yards, at Illinois, and there deliver the same to the Woodson-Fennewald Commission Company, the consignee named in the contract. That defendant fully complied with the provisions of said contract and transported said sheep from Mexico, Missouri, to the National Stock Yards, Illinois, and made delivery thereof to said Woodson-Fennewald Commission Company.

(2) That the plaintiffs appointed the said Woodson-Fennewald Commission Company its agents to receive and take delivery of said sheep at its destination and that the said commission company received the sheep, as the agent of the plaintiffs, and sold the same at the National Stock Yards, Illinois, for and on behalf of the plaintiffs. That the plaintiffs received the proceeds of said sale and by so doing waived any right they had or may have had to have said sheep delivered at St. Louis, Missouri, and that plaintiffs therefore were estopped from asserting their claim for damages set up in the petition.

In their reply plaintiffs denied, under oath, that they executed the contract, set up in the answer, and averred therein that they made a contract with the defendant to transport said sheep to the Independant Stock Yards, St. Louis, Missouri, and gave defendant directions in writing to that effect; that by mistake the agents of the defendant in writing said contract inserted the destination as National Stock Yards, Illinois, but that said mistake was discovered before the sheep were shipped and being advised of its mistake the defendant corrected and agreed to correct said contract by making the destination Independant Stock Yards. The reply further admitted that the sheep were delivered wrongfully to the National Stock Yards by defendant and that thereafter and by reason of said conversion, the sheep were sold by mistake and plaintiffs receiver what they brought at said sale, to-wit, seventeen hundred and ninety-nine dollars and eighty-one cents, and which amount was twenty-five hundred and sixty dollars and nineteen cents less than their real value;

The facts in this case are briefly as follows: About the middle of January, 1918, the plaintiffs purchased from the firm of Mason & Carter two hundred and eighteen breeding ewes. The ewes had been bred and were to bring lambs the following April. The plaintiffs gave directions to Mason & Carter to ship the sheep from Mexico, Missouri, to plaintiffs home at Salem, Missouri. Mr. Carter, a member of the firm of Mason & Carter, saw Mr. Richards, defendant's freight agent at Mexico, Missouri, about shipping the sheep to Salem, Missouri. Mr. Richards informed Mr. Carter that the sheep would have to be shipped to St. Louis, Missouri, and then rebilled from St. Louis to Salem, Missouri. Mr. Carter then communicated with Mr. E. L. Woodson, a member of the firm of Woodson-Fennewald Live Stock Commission Company, and told him he was billing two loads of sheep to plaintiffs at Salem, Missouri, and that Mr. Richards would not bill them through to Salem and re-

quested Mr. Woodson to see a Mr. Clem, live stock agent for the defendant, and see if he could not get them shipped through to Salem without unloading them.

Mr. Woodson saw Mr. Clem and was told by him to bill the sheep to the Independent Stock Yards, St. Louis, Missouri, and then re-bill them over the Frisco to Salem.

Mr. Woodson informed Mr. Carter what Mr. Clem had said and Mr. Carter told him the sheep would be billed to the Woodson-Fennewald Commission Company at the Independent Stock Yards at St. Louis and then re-billed to Salem, Missouri. Arrangements were made for Mr. Andrew McNeely, manager of the Woodson-Fennewald Commission Company, at the Independent Stock Yards St. Louis, Missouri, to take charge of the sheep at the Independent Stock Yards and re-bill them to Salem, Missouri, to plaintiffs.

Mr. Carter then told Mr. Richards, defendant's freght agent, to bill the sheep to the Woodson-Fennewald Commission Company at the Independent Stock Yards at St. Louis, Missouri. Mr Richards then prepared a live stock contract to which was attached an offer of shipment and which the plaintiffs were to sign. Mr. Carter noticed that the offer to shipment read "from Mexico, Missouri, to St. Louis U. D." and he told Mr. Richards he wanted the sheep to go to the Independent Stock Yards and asked him if the letters U. D. meant that they would be shipped to Independent Stock Yards. Mr. Richards replied that they did and that they billed them on the U. D. track to go to the Independent Stock Yards, St. Louis, Missouri.

Mr. Carter further noticed that on the back of the contract were written the words "From Mexico, Mo., To Natl. Stock Yards, Ill.;" and he called Mr. Richards attention to the mistake and told him to bill the sheep to the Independent Stock Yards, that if they went to the National Stock Yards, to the Woodson-Fennewald Commission Company, the sheep would be sold for

slaughter.   He told Mr. Richards to correct the mistake.
Mr. Richards promised to do so and did change the con-
tract on the back thereof, by scratching out the words
Natl. Stock Yards, Ill., and writing in lieu thereof the
words "St. Louis U. D.," but failed to make the correc-
tion in the body of the contract.

The contract names the Woodson-Fennewald Com-
mission Company consignee.   Their name appears only
on the back of the contract.   Mr. Carter suggested that
Mr. Richards write a new contract but Mr. Richards
assured him that the train crew would not see the con-
tract but would get the way bill.   Mr. Carter thereupon
executed the contract and offer of shipment on behalf
of the plaintiffs.

The destination of the sheep, according to the way
bill accompanying the shipment, was St. Louis U. D.
The sheep were received for shipment by the defendant
on the 16th day of January, 1918, and duly arrived at
defendant's station at Bremen Avenue, St. Louis, Mis-
souri.   The Independent Stock Yards are located at
said Bermen Avenue.

The destination named in the original way bill, ac-
companying the shipment, was changed by defendant's
agent at Bremen Avenue Station by writing on said way
bill in blue pencil the words "National Stock Yards."
As to why this change was made the evidence does not
disclose.

The Woodson-Fennewald Commission Company were
located at the National Stock Yards, East St. Louis, Il-
linois, but maintained a branch house at the Independent
Stock Yards, Bremen Avenue, St. Louis, Missouri, which
was conducted for them by the McNeely & Son Com-
mission Company.

The sheep in question were not delivered to the
Independent Stock Yards, St. Louis, Missouri, but were
delivered by the defendant to the National Stock Yards
Company at East St. Louis, Illinois; they were unloaded
into their pens, and, a few hours after they received

them, the said Yards .Company delivered them to the Woodson-Fennewald Commission Company at said last named place.

The season for the sale of breeding ewes had closed at the National Stock Yards at the time the sheep were delivered to the Woodson-Fennewald Commission Company and at said time the great majority of the sheep, consigned to said commission company at the National Stock Yards, Illinois, were sold for immediate slaughter.

Mr. Little, who had charge of the sheep department of the Woodson-Fennewald Commission Company, not knowing that the sheep were not to be put on the market for sale, sold the sheep, within a few hours after they were delivered to him by the Stock Yards Company, and the sheep were immediately thereafter slaughtered. The plaintiffs had no knowledge that the defendant had delivered the sheep to the National Stock Yards Company until after they were killed.

The net proceeds of the sale of the sheep amounted to seventeen hundred and ninety-nine dollars and eighty-one cents, which amount the Woodson-Fennewald Commission Company paid plaintiffs. The defendant offered no evidence other than the shippers contract, heretofore mentioned, which was admitted in evidence.

The jury returned a verdict in favor of the plaintiffs for twenty-one hundred and twenty-five dollars.

At the close of plaintiffs' case, and again at the close of all the evidence, the defendant asked a peremptory instruction in the nature of a demurrer to the evidence which the court refused to give.

Counsel for defendant insist that said instruction should have been given.

(1) They argue that the plaintiffs are precluded from recovering in this action because of the written contract. They contend that the destination of the sheep, according to the written contract, was the National Stock Yards and that delivery of the sheep was made at said destination.

This suit is not founded on a breach of the written contract, but on the alleged breach of the common-law duty of defendant to deliver the sheep to the consignee according to plaintiffs' direction. Plaintiffs were not compelled to sue on the written contract, but could sue defendant on its common-law liability as a common carrier. Defendant pleaded and introduced the written contract as a defense. Plaintiffs had a right to set up and prove that the written contract, by reason of the mistake made therein, did not effectuate the intention of the parties and therefore was not binding on them. [Barlow v. Elliott, 56 Mo. App. 377; Leitensdorfer v. Delphy, 15 Mo. 115; Lupe v. Atlantic & Pacific R. R. Co., 3 Mo. App. 77; Deierling v. Railroad, 163 Mo. App. 1. c. 296, 146 S. W. 814; Creamery Co. v. Railroad, 128 Mo. App. 422; Short v. Thomas, 178 Mo. App. 417, 163 S. W. 252; Wernick v. Railroad, 131 Mo. App. 37, 109 S. W. 1027.]

The evidence disclosed, beyond question, that the parties at no time intended to ship the sheep to the National Stock Yards, Illinois, but intended that the shipment should be made to the Independent Stock Yards, St. Louis, Missouri. The words "Natl. Yards, Ill.," written in the body of the contract, were inadvertently written therein by defendant's agent. The mistake was discovered before the shipment was made and defendant endeavored to correct it by eliminating the said words and writing in lieu thereof, on the back of said contract, the words "St. Louis U. D."

Moreover, defendant's agent, the one who wrote the contract, made out the way bill for the shipment. In the way bill the sheep were billed to St. Louis, U. D.; "St. Louis U. D." meaning Independent Stock Yards, according to the interpretation of said agent. This way bill accompanied the shipment and was the order that controlled the train crew in handling the shipment. Defendant, therefore, was not mislead because of the written contract in making the delivery of the sheep at the National Stock Yards, Illinois.

It is evident from the testimony that the reason the sheep were carried to the National Stock Yards, Illinois, and there delivered, was on account of the unauthorized act of defendant's agent at Bremen Avenue, St. Louis, Missouri, who changed the destination of the shipment and re-billed the sheep to the National Stock Yards, Illinois. This act was the cause of defendant's wrongful delivery and conversion of the sheep. The issue raised by the pleadings regarding the execution of the written contract was for the jury to decide.

(2) Counsel for defendant further contends that the defendant had the right to assume that the consignee, the Woodson-Fennewald Commission Company, were the owners of the sheep and therefore the delivery to said consignee discharged the defendant from liability. although the place of delivery was not the place appointed by the plaintiffs.

To this contention we cannot agree.

It will be seen from the statement of the facts in this case that the defendant had notice that the sheep belonged to the plaintiffs and that the consignee was merely their agent to receive the sheep at the Independent Stock Yards, St. Louis, Missouri, and re-ship them to Salem, Missouri. Defendant, therefore, had no right to indulge in the presumption contended for.

The law governing the question under discussion is tersely stated by the Supreme Court of the United States in the case of Southern Express Company v. Dickson, 94 U. S. 550. Said case is decisive of this question. The court there says: "Where it is known that the goods are the property of the shipper, and have been shipped by him for delivery to the consignee as his agent at a distant place, can the carrier deliver the goods to such consignee or to their order at another place? We think the rule is, that, where the consignor is known to the carrier to be the owner, the carrier must be understood to contract with him only, for his interest, upon such terms as he dictates in regard to the delivery,

and that the consignees are to be regarded simply as agents selected by him to receive the goods at the place indicated.'' [See, also, Smith Company v. Railroad, 145 Mo. App. 394, l. c. 406, 407, 122 S. W. 342; Hutchinson on Carriers, Vol. 1, sec. 177, Vol. 2, sec. 736; Wichita Poultry Co. v. Southern Pac. Ry. Co., 198 S. W. 82 (not officially reported); Cooper v. Bank of British North America, 30 Fed. 171; Bank of British North America v. Cooper, 137 U. S. 473; Bartlett v. Steamboat Philadelphia, 32 Mo. 256.]

It was the duty of the defendant to deliver the sheep, according to the plaintiffs direction, and to make delivery at the place appointed by the plaintiffs, to-wit, at the Independent Stock Yards, St. Louis, Missouri, and a delivery at the National Stock Yards, Illinois, although to the same consignee, did not relieve defendant from its responsibility.

(3) The defendant further contends that the plaintiffs waived the conversion by receiving the proceeds of the sale of the sheep.

In dealing with this question it must be borne in mind that the plaintiffs had no knowledge of the wrongful delivery of the sheep until after the sheep were slaughtered. Defendant was guilty of a conversion in delivering the sheep at the National Stock Yards. The slaughter of the sheep was due to said conversion. The wrongful act of the carrier, the cause of the loss to the plaintiffs, had been committed when plaintiffs accepted the proceeds of the sale of the sheep.

Let us suppose that the plaintiffs had accepted the sheep from the defendant after they were slaughtered. Could it be contended that plaintiffs act in accepting the sheep constitute a waiver, of the conversion, as a matter of law? We think not.

Waiver is a question of intention. What constitutes waiver depends upon facts of each particular case. If reasonable minds might draw different conclusions from

the facts the question of waiver is one for the jury and not for the court.

The plaintiffs contend that they did not take the proceeds of the sale of the sheep in satisfaction of the wrong done them by the defendant; that the loss sustained by them for the miscarying of the sheep to a wrong and bad market and having them sold for slaughter was not intended to be waived and was not affected by plaintiffs acceptance of the proceeds of sale.

There was ample evidence to sustain plaintiffs' contention. It was a question of fact to be determined by the jury. The court was not authorized to declare, as a matter of law, that plaintiffs had waived the conversion. [Arrington v. Wilmington & Weldon R. R. Co. (N. C.), 72 Am. Dec. 559; Lesinsky v. Great Western Dispatch, 10 Mo. App. 134, 1. c. 141; Atkisson v. Steamboat Castle Garden, 28 Mo. App. 124; Peoples State Savings Bank v. Railroad, 192 Mo. App. 614, 178 S. W. 292; Fairbanks, Morse & Co. v. Baskett, 98 Mo. App. 1 c. 67, 71 S. W. 1113; Lake Shore, etc., Railroad Co. v. W. H. McIntyre Co., 60 Ind. App. 191; Lester v. Delaware, L. & W. R. R. Co., 36 N. Y. Sup. 907; Corpus Juris, sec. 380; McSwegan, et al. v. Pennsylvania R. R. Co., 40 N. Y. Sup. 51.]

(4) Respondents further contend that the verdict is excessive.

The evidence discloses that a few days prior to the conversion of the sheep plaintiffs paid thirty-eight hundred and thirty-three dollars and fifty cents for them. There was evidence showing that immediately after they were shipped the price of breeding ewes was from two to two dollars and fifty cents a head higher. Other evidence tended to show that the sheep were worth twenty dollars per head. The verdict of the jury is supported by the evidence.

It would needlessly lengthen this opinion to consider appellant's other assignments of errors. It is

sufficient to say that we find no error which would warrant a reversal of the judgment herein.

The judgment of the Circuit Court of Audrain County should be affirmed, and the Commissioner so recommends.

PER CURIAM:—The opinion of BRUERE, C., is adopted as the opinion of the court. The judgment of the Circuit Court of Audrain County is accordingly affirmed. *Allen, P. J.,* and *Becker, J.,* concur. *Daues, J.,* not sitting.