John W. NICHOLLS, Plaintiff-Appellant,

v.

Andy KAMMERICH, et ux.,
Defendants-Respondents.

No. WD32006.

Missouri Court of Appeals,
Western District.

Dec. 15, 1981.

---

Elvin S. Douglas, Jr. and C. E. Weedman, Jr., Harrisonville, for plaintiff-appellant.

N. R. Bradley and Gary R. Bradley, Lexington, for defendants-respondents.

Before KENNEDY, P. J., and SHANGLER and WASSERSTROM, JJ.

WASSERSTROM, Judge.

Plaintiff John W. Nicholls sued to recover money paid by him toward the purchase of land and cattle. Defendants Andy Kammerich and his wife claimed offset for damages flowing from Nicholls' default. The jury found for defendants, and Nicholls appeals. We affirm.

On May 2, 1970, the parties entered into an informal agreement under which Nicholls was to acquire from Kammerich approximately 160 head of cattle and from Kammerich and wife a 569 acre farm on which those cattle were located. The agreement called for a purchase price of $80,000 on the land, of which $10,000 was to be paid down with a note for the balance. $30,000 was to be paid for the cattle. Nicholls paid $1,000 at the time of the agreement, and according to him the balance of

the purchase price was to be due within one to six months. According to the defendants' testimony, the agreement was that the balance of the purchase price was to be paid within 30 to 60 days.

Nicholls went into possession and had the care of the cattle during all of the summer of 1970. During that time, he sold off some calves and delivered $1,500 of the sale proceeds to Kammerich to be applied upon the purchase price. An ASC payment of $928.91 was also received and credited toward the purchase price. The closing of the purchase transaction was delayed for a variety of reasons, but in large part because of difficulties encountered by Nicholls in arranging finances.

On October 8, 1970, the parties met in the law office of Kammerich's attorney, Mr. Gayles R. Pine. Pine prepared two contracts, one covering the land the other the cattle, both of which were executed by the parties in this meeting. Nicholls paid $6,571.09 in cash to be held by Pine, which together with the two credits previously given during the summer aggregated the $10,000 down payment due on the real estate contract. The parties agreed that the balance of the purchase money was to be paid on October 12, at which time the entire transaction would be closed. Nicholls agreed to deliver a promissory note for the $70,000 balance on the real estate, bearing interest at 7% from July 1, 1970. The $6,571.09 paid by Nicholls on October 8 represented a portion of a $17,000 loan which he had just received from Allen Bank & Trust Co. and which was secured by the cattle being purchased by Nicholls from Kammerich.

Nicholls made no appearance on October 12 to pay the balance of the purchase price as called for by the October 8 agreement. However, he did come to see Kammerich on October 24, at which time he paid an additional $10,000 which was to be applied against the cattle purchase. Although Nicholls apparently did not so advise Kammerich at the time, this $10,000 also came as proceeds of the Allen Bank & Trust Co. $17,000 loan. Both Nicholls and Kammerich agreed in their testimony that at the time of the October 24 meeting, Nicholls stated that he would pay the balance of the purchase money in about two weeks.

Pine testified that a meeting then occurred between him and Nicholls shortly before November 1, the date upon which the real estate transaction was to be closed. Pine inquired about progress being made toward raising the balance of the purchase price due, and the discussion turned to the $17,000 loan from Allen Bank & Trust Co. Pine testified that he told Nicholls at that time: "You shouldn't have mortgaged Mr. Kammerich's cattle... Mr. Kammerich is a little upset about you selling his cattle... He's not happy about it... If I were you, I'd get it done quick, because he will forfeit your contract just as sure as can be. He'll forfeit on you."

Nicholls did not appear to close the real estate contract on the deadline of November 1, 1970. Kammerich testified that on November 8, 1970, he made a long distance phone call to Nicholls, demanding immediate payment of the balance of the money due and a closing of the transaction. As supporting evidence of that long distance conversation, which Nicholls denied, Kammerich produced a record of a toll charge on November 8, 1970, from his telephone to that of Nicholls.

By November 22, the transaction was still not closed, the balance of the purchase price stood unpaid, and the cattle were undernourished and generally in poor condition. Kammerich testified that because of that he started getting bids from other prospective purchasers for the cattle. On December 4 he made a sale of those cattle for $22,000. Those proceeds, taken together with the $10,000 which had been paid by Nicholls toward the cattle, exceeded the total purchase price which Nicholls had agreed to pay. Kammerich then paid the overplus of $2,000 by check payable jointly to Nicholls and Allen Bank & Trust Co. On December 10, Pine wrote to Nicholls demanding performance of the land contract. A conversation then ensued between Nicholls and Kammerich, in which Nicholls

stated that the land was of no value to him without the cattle, and he demanded a return of all of the consideration which he had theretofore paid under the purchase contracts.

Kammerich refused to return that money, and instead listed the farm again for sale. On July 9, 1971, he sold the farm for the best price which had been offered, which was the payment of $75,000 on condition that Kammerich include as part of the sale a four wheel drive Scout.

Plaintiff claimed as damages the $20,000 paid by him, less the $2,000 credit which had been given by Kammerich on December 4, 1970, to Nicholls and the Allen Bank & Trust Co. Kammerich and his wife claimed offset for $5,000 (the difference between the purchase price agreed to by Nicholls and the $75,000 price for which the farm was later sold), plus the value of the Scout vehicle, and plus interest at 7% from July 1, 1970.

On this appeal, Nicholls argues the following points: (1) that he was entitled to a directed verdict or a judgment notwithstanding the verdict in that the Kammerichs had waived his delinquency in payment as a matter of law; (2) that the court erroneously refused instructions tendered by him and erroneously instructed the jury in variation thereto; (3) that the court improperly prohibited his counsel from a certain line of argument before the jury; and (4) that the court erred in failing to discharge the jury because of certain alleged misconduct by Kammerichs' counsel.

## I.

The principal argument made by Nicholls on this appeal is that the Kammerichs waived the delinquency in payment on his part and therefore had no right to claim any offset. He contends that their acceptance of the $6,571.09 payment on October 8, 1970, waived any default on his part prior to that time, and that their acceptance of a further $10,000 on October 24 waived his defaulted payment which was due October 12. He further argues that these acceptances of payment raised a duty on the part

of the Kammerichs to give him notice of demand before he could again be placed in default. His argument continues that the Kammerichs' sale of the cattle, without having given him a specific demand for payment, constituted a breach of the contract on their part. He argues still further that the cattle contract and the land contract were so interrelated that the Kammerichs' alleged breach of the cattle contract excused any obligation on his part to proceed with purchase of the land.

There is much in the situation to support Nicholls' position that the cattle sale and the land sale constituted a single, unified transaction. For present purposes, we shall assume that to be true. On that assumption, if the Kammerichs wrongfully terminated the cattle contract by their sale of the cattle on December 4, 1970, then Nicholls would be excused from proceeding with the purchase of the land, he would be entitled to a return of the partial purchase price he had paid, and the Kammerichs would have no basis for offsetting damages. The trouble with Nicholls' whole argument is that the evidence here does not sustain his contention that the Kammerichs as a matter of law waived his default in payment.

■ There can be no question but that Nicholls defaulted on October 12, 1970, by failing to meet that agreed deadline for paying the $30,000 purchase price on the cattle. Twelve days later he did call upon Kammerich and offered a partial payment of $10,000 coupled with a promise to pay the balance in two weeks. It was in light of that promise that Kammerich accepted the $10,000 payment. Although Nicholls insists upon calling this a "waiver," Kammerich's action can be better described as a grant of an extension of time for payment.

It is scarcely credible to believe that by accepting $10,000 on October 24, 1970, Kammerich was thereby evidencing his agreement to wait for some indefinite period of time for Nicholls to finally arrange the financing which had proved so elusive ever since the preceding May. Such an

intention by Kammerich is especially dubious in light of the condition of the cattle, which by all accounts had become very poor, with a decided loss of weight and consequent value. The common sense of the situation tends to the belief that Kammerich was willing to go along for an additional short period of time in reliance upon the partial payment and the further promise by Nicholls that he would pay the balance in two weeks. That Kammerich did intend to enforce the new two week deadline is virtually demonstrated by his long distance telephone call to Nicholls on November 8, which was almost exactly two weeks to the day from the October 24 promise.

▮ If there could be any reasonable question as to whether Kammerich's action on October 24 constituted a waiver, the obligation to prove the waiver rested upon Nicholls. For him to prevail, this was under the circumstances a question of fact for submission to the jury. *State ex rel. Continental Ins. Co. v. Becker*, 336 Mo. 59, 77 S.W.2d 100 (1934); *Macan v. Missouri Mut. Ass'n*, 60 S.W.2d 402 (Mo.App.1933); *McNeill v. Wabash Ry. Co.*, 207 Mo.App. 161, 231 S.W. 649 (1921). He requested no such instruction. It is for that reason that Nicholls is now forced to argue that there was a waiver "as a matter of law." The evidence in this case was far from clearly so establishing. Nicholls' first point is overruled.

### II.

The quarrel concerning instructions requires setting forth those which were given as well as one which was refused. The instructions given were as follows:

#### "INSTRUCTION NO. 5

"Your verdict must be for plaintiff and against defendants on plaintiff's claim for damages on the land sale if you believe:

"First, defendants agreed to sell plaintiff approximately 160 head of cattle and their Benton County farm of 569 acres, as a single transaction, and

"Second, defendants failed to give notice to plaintiff of their intention to declare forfeiture, and

"Third, defendants sold the cattle herd to another party, and

"Fourth, because of such action, defendants failed to perform their contract obligations with plaintiff, and

"Fifth, plaintiff was thereby damaged, unless you believe plaintiff has failed to perform or should be limited to a lesser recovery by reason of Instruction No. 7."

#### "INSTRUCTION NO. 6

"Your verdict must be for plaintiff and against defendant Andy Kammerich on plaintiff's claim for damages on the cattle sale if you believe:

"First, defendant, Andy Kammerich, agreed to sell plaintiff approximately 160 head of cattle, and

"Second, defendant, Andy Kammerich, failed to give notice to plaintiff of his intention to declare forfeiture, and

"Third, defendant, Andy Kammerich, sold the cattle herd to another party, and

"Fourth, because of such action, defendant, Andy Kammerich, failed to perform his contract obligation with plaintiff on the cattle sale, and

"Fifth, plaintiff was thereby damaged, unless you believe plaintiff has failed to perform or should be limited to a lessor [sic] recovery by reason of Instruction No. 8."

#### "INSTRUCTION NO. 7

"If your verdict is for plaintiff under Instruction No. 5 then you must determine whether plaintiff failed to complete the contract to purchase defendants Andy Kammerich and Laura Kammerich's real estate according to its terms and whether, as a direct result of such failure, if any, defendants Andy Kammerich and Laura Kammerich were damaged.

"If you believe:

"First, plaintiff failed to complete the terms of the contract; and

"Second, as a direct result thereof, defendants Andy Kammerich and Laura Kammerich were damaged, then you must deduct the amount of such damage from plaintiff's damage. In the event such damage is equal to or exceeds plaintiff's damage, your verdict must be for defendants, Andy Kammerich and Laura Kammerich."

## "INSTRUCTION NO. 8

"If your verdict is for plaintiff under Instruction No. 6 then you must determine whether plaintiff failed to complete the contract to purchase defendant Andy Kammerich's cattle according to its terms and whether, as a direct result of such failure, if any, defendant Andy Kammerich was damaged.

"If you believe:

"First, plaintiff failed to complete the terms of the contract; and

"Second, as a direct result thereof, defendant Andy Kammerich was damaged, then you must deduct the amount of such damage from plaintiff's damage. In the event such damage is equal to or exceeds plaintiff's damage, your verdict must be for defendant, Andy Kammerich."

Prior to the giving of those instructions, Nicholls requested but the court refused an instruction which appears in the legal file as Instruction No. 11:

"Your verdict must be for plaintiff if you believe:

"First, defendants agreed to sell plaintiff approximately 160 head of cattle and their Benton County farm of 569 acres, as a single transaction, and

"Second, defendants failed to give notice to plaintiff of their intention to declare forfeiture, and

"Third, defendants sold the cattle herd to another party, and

"Fourth, because of such action, defendants failed to perform their contract obligations with plaintiff, and

"Fifth, plaintiff was thereby damaged."

Nicholls argues that he was entitled to Instruction No. 11 because that would have submitted his theory that the land and cattle sale was a single transaction, whereas Instructions 5 and 6 make a division between the land sale and the cattle sale. However, it will be observed that Instruction 5, paragraph First, did submit to the jury the issue of whether the Kammerichs had agreed to sell the cattle and the farm "as a single transaction." This paragraph in Instruction No. 5 was identical to paragraph First in Instruction No. 11 tendered by Nicholls. Thus Nicholls' theory of the case in this regard was submitted to the jury in the very language chosen by him. No prejudice has been demonstrated by Nicholls by reason of dividing tendered Instruction 11 in other respects between Instructions 5 and 6.

As an alternative to the giving of tendered Instruction 11, Nicholls requested the giving of Instructions 5 and 6 without the "tail" following paragraph Fifth in each instruction. He assigns the refusal of those requests as error on the ground that the tails improperly allowed consideration of Instructions 7 and 8. Nicholls further objects to the giving of Instructions 7 and 8 for the reason that those instructions permitted the jury to allow offsetting damages to the Kammerichs, which Nicholls claims was barred by waiver as a matter of law.

The question of waiver has already been fully considered under Section I of this opinion, where it is concluded that waiver does not appear as a matter of law. If Nicholls desired to have that matter submitted as an issue for the jury's review, it was his obligation to request an appropriate instruction. He made no such request.

Nicholls' point 2 is overruled.

### III.

During the course of argument by Nicholls' counsel to the jury, he stated: "Now, these contracts on October 8 were drawn by Mr. Pine, Mr. Kammerich's attorney. If there is any ambiguity, questions, in your mind as to how to construe those contracts or as to how they should be read, it's the law in Missouri that they should be con-

strued—". At that point Kammerich's attorney objected to counsel "making a statement as to what the law is," and the court sustained the objection. Nicholls assigns that ruling as error.

Nicholls argues that an ambiguity exists on the ground that the parties dispute whether the October 8th contracts reflected only one transaction or two. It is very questionable if that is the kind of "ambiguity" in a written instrument which calls for a construction adverse to the draftsman. However, if this be considered an ambiguity within the rule mentioned and if Nicholls desired a statement of that rule to the jury, any such declaration could be made only by the judge. Instructing the jury as to the law is a prerogative of the court, which may not be usurped by counsel in jury argument. *Stroh v. Johns*, 264 S.W.2d 304 (Mo.1954); *Doyle v. St. Louis S.F. Ry. Co.*, 571 S.W.2d 717 (Mo.App.1978); *Fowler v. Robinson*, 465 S.W.2d 5 (Mo.App. 1971); *Casto v. Railway Express Co.*, 219 S.W.2d 276 (Mo.App.1949).

In any event, the ruling in question resulted in no prejudice. The question of whether there was only a single transaction assumed importance only as it bore on the issue of whether Nicholls was excused from proceeding with the land contract by Kammerich's alleged breach as a matter of law of the cattle contract. Section I of this opinion holds there was no such breach as a matter of law. Accordingly, the attempted argument to the jury was immaterial.

Nicholls' third point is overruled.

## IV.

During the course of examining witness Pine, Kammerich's counsel inquired concerning the October 8 contracts as follows: "Is there any provision in either contract making one contract contingent or conditional upon the other?" Nicholls' attorney objected to that as calling for a legal conclusion and the court ruled that the contract would be the best evidence. Kammerich's attorney then directed the following question to Nicholls' attorney: "Will you stipulate that there is no such provision in this contract?" Nicholls' attorney immedi-

ately objected and moved that the jury be discharged. The court overruled the motion to discharge the jury but did instruct the jury as follows: "Ladies and gentlemen of the jury, we'll ask you at this time to please disregard any reference Mr. Bradley may have made to a stipulation between the parties as to what the contract says. I think the contract speaks for itself." Nicholls assigns as error the refusal of the trial court to discharge the jury as requested by him.

The granting of a mistrial is a drastic remedy, the granting of which lies within the sound discretion of the trial court. An appellate court will interfere only if there has been a manifest abuse of discretion. *Hoene v. Associated Dry Goods Corporation*, 487 S.W.2d 479 (Mo.1972). There was no such abuse here. Nicholls' fourth point is overruled.

The Kammerichs have urged dismissal of Points II and IV of Nicholls' brief on the ground of noncompliance with Rule 84.-04(d). The foregoing disposition of those points by this opinion makes it unnecessary to rule on that request.

Affirmed.

All concur.